[S. F. No. 377.   Department One.—February 1, 1897.]

## BANK OF BRITISH COLUMBIA, APPELLANT, *v.* WILLIAM FRESE ET AL., RESPONDENTS.

COLLATERAL SECURITY — NOTE TO SECURE DRAFTS FOR VALUE OF MERCHANDISE—INSOLVENCY OF PRINCIPAL MAKER—DEFENSE OF SURETIES —APPLICATION OF PROCEEDS OF MERCHANDISE—BURDEN OF PROOF.— In an action upon a note given to a bank as collateral security for the repayment to it of the amount of drafts drawn upon it for the value of merchandise shipped to the principal makers of the note, which were to be paid by the bank when accompanied by invoices and bills of lading of the merchandise, where it appears that the principal makers had become insolvent, and accommodation makers of the note, who signed it as sureties for the principal makers, pleaded as a defense that the bank held the invoices and bills of lading of the merchandise as security for the payment of the drafts, and had received from the proceeds of the

merchandise on account of said drafts a sum in excess of their aggregate amount, the burden of proof is upon them to show that the bank had been repaid from those proceeds, and to establish improper debit items in the account of the bank, as rendered, sufficient to equal a balance shown by its account to be due to the bank.

ID.—DEDUCTION OF CHARGES FROM PROCEEDS—EXPENSES OF BANK.—Reasonable charges paid by the bank for storage of the cargo, insurance upon it while stored, cartage, brokerage, etc., properly incurred in caring for, preserving, and selling it, are to be deducted from the gross proceeds realized by the bank from the sale of the cargo.

ID.—MARINE INSURANCE — DRAYAGE PAID BY CHECK. — Payment by the bank for marine insurance upon the cargo, made upon the arrival of the vessel, cannot be allowed as a deduction from the proceeds of the cargo; nor is the bank entitled to charge for drayage which had been paid for by the check upon it of the principal makers of the note.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order denying a new trial.   J. C. B. HEBBARD, Judge.

The facts are stated in the opinion.

*Sidney V. Smith,* for Appellant.

*Naphtaly, Freidenrich & Ackerman,* for Respondents.

HAYNES, C.—On November 3, 1891, the plaintiff made and delivered to William Frese & Co., a copartnership doing business at San Francisco, a letter of credit directed to Bullock Bros. & Co. of Rangoon, authorizing them to draw on plaintiff, at London, drafts at six months' sight, for any sum or sums not exceeding in the aggregate £13,000 sterling, for the invoice cost of merchandise to be shipped from Rangoon to San Francisco on account of said Frese & Co., and agreed to pay said drafts at maturity, provided they were accompanied by invoices and bills of lading purporting to be of the required value, and shipped as above stated.   Under said letter of credit Bullock Bros. & Co. drew drafts upon the plaintiff in London amounting in all to $61,892.91, and the same were accompanied by invoices and bills of lading as required by the letter of credit.

On March 28, 1892, none of said drafts having matured or been paid, the defendants Roth, Blum & Co., at

the request of William Frese & Co., executed with said
last-named firm a promissory note of that date, at one
day, for the sum of $10,000, and delivered the same to
the plaintiff as collateral security for the payment of
drafts to be drawn under said letter of credit, said note
to be canceled and returned to Roth, Blum & Co., as
soon as the drafts under said letter of credit should be
paid.

The cargo of rice purchased under said letter of credit
arrived at San Francisco September 17, 1892.   Frese &
Co. failed in business some time between June 20th and
August 21, 1893.   Up to the time of their failure they
made sales of portions of the rice and the bank deliv-
ered the rice so sold.   After their failure the bank
disposed of the rice through brokers.   Plaintiff's ac-
count as rendered shows a balance due the bank of
$7,981.85.   This action is upon said promissory note.
Frese & Co. pleaded their discharge in insolvency.
Roth, Blum & Co. set out in their answer the circum-
stances, under which the note was made, and alleged that
the aggregate amount of drafts drawn was $61,892.91,
that plaintiff held as security for the payment of said
drafts the invoices and bills of lading of said merchan-
dise, and had received on account of said drafts a sum
largely in excess of their aggregate amount.

The court found that plaintiff had received the pro-
ceeds of said cargo, and that "said cargo realized a sum
in excess of the aggregate amount of all the drafts
drawn under said letter of credit, to wit, in excess of the
sum of $61,892.91."   Judgment was entered for the de-
fendants, and the plaintiff appeals therefrom, and from
an order denying its motion for a new trial.

Appellant contends that said finding is not justified
by the evidence.

Upon the trial the discharge in insolvency of Frese
& Co. was admitted by the plaintiff, and Roth & Blum
admitted the incorporation of the plaintiff and the mak-
ing and delivery of the note set out in the complaint,
and then put in evidence said letter of credit and plain-

tiff's acknowledgment in writing that said note was held by it as collateral security for the payment of said drafts. It was also admitted by all parties that drafts were drawn under said letter of credit to the amount of $61,892.91, all of which were paid by the plaintiff. Defendants then called as a witness Walter Powell, manager of the Bank of British Columbia in San Francisco, by whom said letter of credit was issued, who testified that the total amount received by the bank for the rice was $74,689. Two accounts were made by the bank, the first from the arrival of the cargo down to the failure of Frese & Co., during which time the sales were made by them and the deliveries by the bank, and the second covered the remainder of the sales, which were made by the bank through brokers; and these accounts were put in evidence by the defendants, from the face of which it appears that the sales were closed July 31, 1894, and at that date there was a balance due the bank of $7,981.85. The sole controversy is as to whether the bank was entitled to charge against the proceeds of sales freight, insurance, customs duties, drayage, brokers' commissions, discounts, interest, etc.

Of course, it was only necessary for the defendants in the court below to establish improper debit items, in the account as rendered, to equal the balance shown by the account to be due to the bank, in order to defeat the plaintiff. It is said by counsel for appellant in his brief that the court below adopted the defendants' view that the expenses of the cargo, consisting of freight, duty, weigher's fees, drayage, and storage, amounting to $15,602.79, could not be charged by the bank and deducted from the proceeds as against Roth, Blum & Co,, who are sureties to the extent of $10,000, the amount of their note. If such holding is correct, the judgment must be affirmed as a matter of course; though if it be wrong, and it be shown that other items appearing on the debit side of the account, equaling the balance claimed by the bank, were improper, an affirmance must follow, notwithstanding the error.

It should first be observed that the burden of proof to establish their defense that the bank had been repaid by the proceeds of the cargo rested upon the defendants. A full and detailed account had been rendered by the bank to the defendants, Roth, Blum & Co., and they called as their witness the manager of the bank, and examined him as to various items of the account, and put the entire account in evidence without reservation or qualification, except such as may be inferred from his examination as to particular items, and therefore all other items, unless they appear on the face of the account to be improper, should be allowed. Their answer alleged, and the court found, that plaintiff held as security for the payment of said drafts the invoices and bills of lading of the cargo, and if the plaintiff had refused or neglected to obtain possession of the cargo so that its proceeds were lost to the bank, there can be no question that Roth, Blum & Co. would have been released from liability as sureties, unless upon the clearest showing that the cargo, if received and properly disposed of by the bank, would have been insufficient to reimburse it. It is not shown that the bank could have obtained possession of the cargo, and thus availed itself of that security, without the payment of the freight and other charges above mentioned. It held the invoices and bills of lading and was the apparent owner, holding the legal title, and *prima facie* liable for these charges.

It is true the manager of the bank, upon his examination by the defendants, testified that Frese & Co. drew checks payable to John Livingston for freight charges amounting to $11,603.40, and, when presented, were paid by the bank and charged in the books to the ordinary account of Frese & Co., but the error was discovered the next morning and corrected by charging them to the rice account. He further testified, however, that prior to that time Frese & Co. had an account at the bank, but that they did not, at the date of the arrival of the cargo, or at any time afterward, have any moneys to their credit in said bank. The correction of the charge was therefore proper.

The first item of the account is a charge of $1,573 for marine insurance upon the cargo, paid by plaintiff upon the arrival of the vessel, September 17, 1892, and this charge appellant concedes is improper, and should be deducted from the balance of $7,891.85.

It may be further said, without entering into details, that reasonable charges for storage, insurance upon the rice while stored, cartage, brokerage, etc., properly incurred in caring for, preserving and selling the rice, are properly deducted from the gross receipts. No question is made as to the necessity or propriety of any of these acts, or as to the prices for which the rice was sold, or the manner of sale; but some special objections are made to particular items which remain to be noticed.

It is contended by defendants that various charges of interest on overdrafts at different dates, from September 30, 1892, to June 19, 1893, are improper. Prior to, and including September 30, 1892, plaintiff had paid for freight and customs duties $12,306.40, and on October 11th it had paid on the draft drawn under the letter of credit, $35,157.74, and on October 14th, balance of draft, $26,735.17, in all $74,199.31, a sum exceeding the receipts by over $24,000. It is not questioned that, as between the bank and Frese & Co., that the interest charged had not been earned, or properly charged; and, if so, we fail to see upon what ground the defendants, Roth, Blum & Co., can object. The account shows, however, that nearly, if not the whole of the interest so charged was in fact paid by Frese & Co., and these charges of interest are balanced by the credits of money paid by them, and therefore, so far as the charges and credits balance each other, the account as to Roth, Blum & Co., is not affected, even if it be conceded that they are not liable for the interest so charged.

In the account certain entries appear of a given quantity of rice sold at a price stated, amounting to a given sum, "less discount" of a stated amount, the balance being carried out as the amount received from the sale. These items of discount amount to $226.14, and respond-

ents contend that these should be deducted. It is said that these discounts were made for cash, and that the bank should have waited for its pay. It does not appear, however, that the discounts were more than the interest on time sales, or were unusual, or more than equaled the risk of loss if the sales had been made on credit. Respondents' contention upon this point cannot be sustained.

On the debit side of the account is an item, " To Pac. M. S. S. Co. $758.35," and this entry, it is said, does not indicate what it was for, and should be disallowed. But it was part of the account put in evidence by defendants, and if it required explanation they should have called for it.

It is further objected by respondents that in the sums charged on October 11 and 14, 1892—which were in payment of the drafts—there was included a commission of one per centum, amounting to $618.92, and that they are not chargeable therefor, and that that amount should be deducted. Said sums so charged were the precise amounts of the drafts drawn at Rangoon by Bullock Bros. & Co., under the letter of credit " for the invoice cost of merchandise," and did not include any commission. The answer of defendants, Roth, Blum & Co., alleged that the drafts were so drawn, and were for the sum of $61,892.91 (and the court so found), and said charges above mentioned only equaled the said sum. The contract between the bank and Frese & Co. did provide that a commission of one per cent should be paid the bank upon the amount of drafts drawn under said letter of credit, but it is not included in said items, nor anywhere in the account. If it did, it should be excluded, as defendants are not liable under their contract for profits made by the bank; but only for the liability it incurred.

On the record before us we find but two items which should be deducted from the balance claimed by the plaintiff. One of these, the item for marine insurance upon the cargo, $1,573, is conceded by appellant. The

other is a charge dated " October 6th—To Popper (Custom House drayage to warehouse), $470.85," concerning which Mr. Powell testified that it "was paid by the check of W. Frese & Co. on the bank," from which we infer that it was paid with the funds of Frese & Co., and not out of the proceeds of the rice. If it was not paid by Frese & Co. it should stand.

We have not verified the footing of the accounts, but have taken the balance as stated; and deducting the above charges, which as the evidence now stands should, be disallowed, there would appear to remain due to the plaintiff from respondents $5,938.10. It follows that the finding that " said cargo realized a sum in excess of the aggregate amount of the drafts drawn under said letter of credit" is not justified by the evidence.

But one exception to ruling upon evidence is specified. Mr. Powell was asked the following question: " Did you ever learn from Mr. Blum whether his firm was interested with Frese & Co. in this cargo of rice?" The objection that the question was incompetent and irrelevant was sustained. No offer was made to show that the witness had been so informed, and hence it does not appear that plaintiff was prejudiced, even if it be conceded that the ruling was erroneous.

We are asked by appellant to enter judgment for the plaintiff for such amount as appears to be due it, the facts being before us. But the findings would not support such a judgment, and this court cannot make findings of fact.

The judgment and order appealed from should be reversed and a new trial granted.

SEARLS, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed and a new trial granted.

HARRISON, J., VAN FLEET, J., McFARLAND, J.

Hearing in Bank denied.