WILSON ET AL., APPELLANTS, v. FREEMAN, RESPONDENT.

(No. 1,762.)

(Submitted January 12, 1904.   Decided February 1, 1904.)

*Mining Claims—Location—Declaratory Statements—Description of Claim—Markings — Amendment—What Law Governs—Improvements — Representation Work—Objections—Right to Urge.*

1. Political Code, Section 3611, provides that the equivalent of a discovery shaft in a mining location shall be "a cut, a cross-cut or a tunnel which cuts a lode at the depth of ten feet below the surface, or an open cut of at least ten feet in length along the lode from the point where the lode may be in any manner discovered," and Section 3612 requires the declaratory statement to set forth the dimensions and location of the discovery shaft, or its equivalent sunk on lode or placer claims.   *Held,* that where a recorded declaratory statement merely recited that the claim was a relocation of the M. lode claim, on which the discovery was a shaft 10 feet in depth and 4½ feet in size, but failed to state that such were the dimensions at the date of the relocation, and it contained no reference to a discovery shaft or its equivalent, except the recitals, "from the center of discovery shaft, which is an open cut ten feet deep," and "beginning at an open cut which is the point of discovery," it was insufficient.

2. Political Code, Section 3615, declares that the relocation of an abandoned lode or placer claim must be made by sinking a new discovery shaft and fixing new boundaries in the same manner as if an original location had been made, or the relocator may sink the original discovery shaft ten feet deeper, in which case the declaratory statement shall give the depth and dimensions of the original discovery shaft at the date of the relocation. *Held* that, where the claim was based on a relocation of an abandoned claim, a declaratory statement, failing to show the dimensions and locations of the shaft on the abandoned claim at the date of such location, and that it was sunk ten feet deeper, was invalid.

3. In a suit to establish an adverse claim filed against an application for a patent to a mining claim, the United States is a *quasi* party, and if, upon a trial, neither plaintiff nor defendant is entitled to a patent to the ground in controversy, the court must so find.

4.  The validity of a mining location, in an action to determine an adverse claim before patent issued, must be determined by the law in force at the time the location was made.

5.  Under Laws 1901, p. 56, authorizing the filing of an amendatory declaratory statement of the location of a mining claim where the original was defective or erroneous, where a locator misdescribed his claim as running easterly and westerly, he was entitled to file an amended declaratory statement that the claim ran in the northerly and southerly direction, to correspond to the staking of the claim on the ground.

6.  In an action in support of an adverse claim in an application for a patent to a mining claim, an objection that the claimant had not placed on the claim sought to be patented $500 worth of work or improvements could not be considered, such question being within the exclusive jurisdiction of the land office.

7.  Where an adverse claimant to a mining location had no right or title thereto, he could not object that the claimant was not entitled to a patent for failure to do the annual representation work thereon.

*Appeal from District Court, Park County; Frank Henry, Judge.*

ACTION by A. B. Wilson and others against George O. Freeman in support of an adverse claim to a mining location. From a judgment in favor of defendant, plaintiffs appeal. Affirmed.

*Mr. W. J. Beecher,* and *Mr. George F. Shelton,* for Appellants.

*Mr. H. G. McIntire,* and *Mr. S. H. McIntire,* for Respondent.

MR. COMMISSIONER CLAYBERG prepare the opinion for the court.

This is an action brought in support of an adverse claim filed against an application for patent to a mining claim. The contentions of the respective parties, as we gather them from the record, are briefly as follows: Respondent asserts that his predecessors had located the W. W. Dixon lode claim on January 1, 1891, which, according to the declaratory statement duly recorded, ran 1,400 feet easterly and 100 feet westerly from the discovery shaft. Appellants base their rights upon a location of the Snowstorm lode claim, made September 5, 1898, which, according to the declaratory statement, extends along the vein

1,150 feet in a northerly direction and 300 feet in a southerly direction from discovery.

Appellants' declaratory statement of the Snowstorm location is as follows:

"Quartz Location. Notice is hereby given that the undersigned' citizens of the United States, did, on the 5th day of Sept., 1898, discover a quartz lode or vein, bearing gold, silver, iron and other valuable metals, with at least one well-defined wall, to be known as the Snowstorm quartz lode mining claim, and did on said day locate and claim, by virtue of chapter six, of title XXXII, of the Revised Statutes of the United States, and the laws of the state of Montana, 1150 feet in a northerly direction and 350 feet in a southerly direction from the center of the discovery shaft, which is an open cut ten feet deep (at which cut this notice of location is posted), and 300 feet on each side from the middle or center of said lode or vein at the surface, comprising in all 1,500 feet in length along said vein or lode, and 600 feet in width. This lode is situated in the Sheepeater unorganized mining district, in the county of Park and state of Montana (the adjoining claims are the New York mining claim on the north and the Sunshine lode mining claim on the west), and is a relocation of the Monarch lode claim, on which the discovery was a shaft which was ten feet in depth, 4½ feet in size, and —— feet in ——, has been extended in —— by the undersigned —— feet ——. The exterior boundaries of this location are distinctly marked by posts or monuments at each corner of the claim, so that the boundaries can be readily traced, viz.: Beginning at open cut which is the point of discovery, thence running in a northerly direction 1,150 feet to the northeast corner stake, marked No. 1; thence 600 feet west to the northwest corner stake, marked No. 2; thence 1,500 feet in a southerly direction to the southwest corner stake, marked No. 3; thence 600 feet in an easterly direction to southeast corner stake, marked No. 4; thence 1,500 feet in a northerly direction to stake No. 1 at N. E. corner. A. B. Wilson, Thomas Lenaghan, Paul Rigler, John Viditz, Locator—and Claimant—."

This declaratory statement, when offered in evidence, was objected to by respondent, on the ground that "it does not meet the requirements of the statute." Its validity must therefore be determined; because, if it be invalid, appellants' location fails, and they could not maintain this character of action, and were not entitled to a judgment.

Section 3611 of the Political Code, among other things, provides that: "The locator or locators must define the boundaries of his or their claim by marking a tree or rock in place, or by setting a post or stone at each corner or angle of the claim. When a post is used, it must be at least four inches square by four feet six inches in length, set one foot in the ground, with a mound of earth or stone four feet in diameter by two feet in height around the post. When a stone is used, not a rock in place, it must be at least six inches square and eighteen inches in length, set two thirds of its length in the ground, which trees, stakes or monuments must be so marked as to designate the corners."

Section 3612 provides what the declaratory statement which is recorded shall contain, and among the other things required are "(6) The dimensions and location of the discovery shaft, or its equivalent, sunk upon lode or placer claims. (7) The location and description of each corner, with the markings thereon."

An examination of the recorded declaratory statement discloses that the boundary stakes were simply marked "No. 1," "No. 2," "No. 3," and "No. 4." It must be remembered that under Section 3611 the stakes "must be so marked as to designate the corners," and under Section 3612 the recorded declaratory statement must contain "a description of each corner, with the markings thereon."

We doubt whether this declaratory statement shows that the stakes were "so marked as to designate the corners," or that it contains "a description of each corner with the markings thereon," within the purview of the following decisions: *Purdum* v. *Laddin,* 23 Mont. 387, 59 Pac. 153; *Walker* v. *Pennington,*

27 Mont. 369, 71 Pac. 156; *Hahn* v. *James,* 29 Mont. 1, 73 Pac. 965; but, inasmuch as it is clearly insufficient for other reasons, we do not express any definite opinion thereon.

Section 3612, as above seen, requires the declaratory statement to set forth the dimensions and location of the discovery shaft, or its equivalent, sunk upon lode or placer claims. The equivalent of a discovery shaft is defined by the statute in the following language: "A cut, a cross-cut or a, tunnel which cuts a lode at the depth of ten feet below the surface, or an open cut of at least ten feet in length along the lode from the point where the lode may be in any manner discovered, is equivalent to a discovery shaft." (Section 3611, Political Code.) The recorded declaratory statement does not satisfy the requirements of these provisions. The only reference to a discovery shaft, for the purpose of giving its dimensions, is as follows: The Snowstorm "is a relocation of the Monarch lode claim, on which the discovery was a shaft which was ten feet in depth and four and one-half feet in size," not that these were its dimensions "at the date of such relocation." No reference is made to a discovery shaft or its equivalent upon which the location is based, except the recitals, "from the center of discovery shaft which is an open cut ten feet deep," and "beginning at an open cut which is the point of discovery," neither of which is sufficient to give, as a fact, the dimensions and location of the discovery shaft or its equivalent.

Again, Section 3615 provides: "The relocation of an abandoned lode or placer claim must be made by sinking a new discovery shaft and fixing new boundaries in the same manner as if it were an original location made under this chapter; or the relocator may sink the original discovery shaft ten feet deeper, in which case the declaratory statement must give the depth and dimension of the original discovery shaft at the date of such relocation." Now, under this section, if the Snowstorm was a relocation of the Monarch, the locators were required, either to sink a new discovery shaft or its equivalent, the same as if it were an original location, in which case they would be

bound to set forth in their declaratory statement the dimensions and location of such discovery shaft or its equivalent, or sink the original discovery shaft ten feet deeper, in which case the declaratory statement would be required to give, *first,* the depth and dimensions of the original discovery shaft "at the date of relocation," and, *second,* the dimensions and location of the discovery shaft or its equivalent upon which the location was based (which in such instance must be the original discovery shaft sunk ten feet deeper). There is nothing in the declaratory statement above quoted showing the dimensions and location of the discovery shaft, or its equivalent, if a new shaft was sunk as a basis of location; or showing the depth and dimensions of the discovery shaft upon the abandoned claim "at the date of such location," and that it was sunk ten feet deeper, if the location was based upon such facts. Therefore we are satisfied that the declaratory statement introduced in evidence by the plaintiffs and appellants was absolutely void, and gave the plaintiffs and appellants no right to maintain the suit in controversy, or have judgment entered in their favor upon such suit.

Of course, in suits of this character the United States is a *quasi* party, and if the court is satisfied, upon a trial of the case, that neither plaintiff nor defendant is entitled to a patent of the ground in controversy, it must so find and decide. (*Jackson* v. *Roby,* 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990.)

It therefore becomes necessary to investigate the validity of respondent's alleged title. As was stated before, respondent claims under a location made on the 1st day of January, 1891. This location, having been made prior to the Code of 1895, must be tested by the law in force at the time it was made. We have no doubt that it was *prima facie* a valid location under the laws of Montana and the United States existing at the time it was made. Respondent claims that there was a mistake in the recorded certificate of location as to the direction of the vein located and of the claim, and a discrepancy between such certificate and the staking of the claim on the ground; that

while in the notice the claim was described as running easterly and westerly, in truth and in fact, by the staking of the claim on the ground, it ran in a northerly and southerly direction. Therefore, for the purpose of correcting this mistake, an amended declaratory statement was recorded in 1899. This amended statement recites fully the facts in regard to the making of the original location, and states that it was "for the purpose of more fully and perfectly describing the said claim, and with no intention or design to waive any rights accrued or accruing under and by virtue of the said notice of location so filed as aforesaid." It is therefore not a new location or a relocation, but simply an amendment of the declaratory statement of the old location, made solely for the purpose of correcting a mistake therein in the description of the claim as to its staking.

The legislature in 1901 (Laws 1901, p. 56) enacted a law allowing the filing of an additional or amendatory declaratory statement in cases where the original was defective or erroneous. Section 2 of this Act provides as follows: "Any amended or additional declaratory statement which may have heretofore been filed by a locator, or his successors or assigns, shall have the same force and effect and be subject to the same terms and conditions as though the same had been filed under the provisions of Section 1 of this Act." In our opinion, under this law, the original location and the amended declaratory statement, construed together, constituted a valid location of the W. W. Dixon in a northerly and southerly direction, and that the respondent, as against plaintiffs and the United States, was entitled to a patent for the W. W. Dixon, upon making the proper proof before the court and land office. Respondent did not change the location on the ground by the amended declaratory statement, but simply conformed the description as stated in the original declaratory statement, as recorded, with the actual staking on the ground as made at the time the original location was made. Respondent had a perfect right to do this, and, inasmuch as plaintiffs' location has been held to be absolutely void, they were not interested in any of the ground in

controversy, and therefore have no right to object to the action of respondent in that regard.

Appellants also contend that respondent has not placed upon said lode claim, so sought to be patented, $500 work or improvements. This was a matter which could not be in controversy in the trial of a suit of this character. The court has nothing to do with the question as to whether the work was done or not. It is a question exclusively for the land office, and the respondent might have, if he had not already done so, completed such work and improvements at any time before actually making his final entry in the land office.

Appellants further allege that the W. W. Dixon lode was forfeited because of the failure of respondent to do the necessary annual work upon the claim for the years 1897 and 1898. The purpose of annual representation is to enable the locator to hold his claim as against all persons. It is not required for any purpose which affects the general government. (2 Lind. on Mines (2d Ed.) Sec. 624, and cases.) The government cannot forfeit the claim if the annual representation has not been placed upon it. In order to make the want of annual representation effective, the ground must be entered and located by another person. We have seen that the pretended entry and location by the appellants was absolutely void and of no effect, and therefore they cannot raise the question as to the sufficiency of representation work. Besides, the proof in the record discloses that representation work was done for both these years on claims which are a part of a group of contiguous claims owned by the respondent, of which the W. W. Dixon was one, and that the work done upon the other claims "had a tendency to develop the W. W. Dixon claim."

Counsel for respondent raised and argued the proposition that the plaintiffs' location was void because of its great excess, being 806 feet wide at one end and over 1,800 feet in length, one side line being 1,858 1-10 feet long, and the other 1,951 5-10 feet long (as disclosed by the complaint on file in the action). The point is a very important one, and its consideration is not

necessary to a decision of the case, inasmuch as appellants' location is void for other reasons.

We are therefore of the opinion that the judgment of the court below was correct, and should be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion the judgment is affirmed.