[Civ. No. 6233. Third Appellate District.—January 10, 1940.]

T. J. EHRHART, Sr., Respondent, v. TOM BOWLING et al., Appellants.

Charles P. Snyder, George F. Snyder and Virgil M. Airola for Appellants.

Joseph H. Huberty for Respondent.

DEIRUP, J., *pro tem.*—Plaintiff located the New Ford Quartz Mine on July 25, 1928, and on January 28, 1931, he extended the claim in an easterly direction by locating the East Extension of the New Ford Quartz Mine. On March 19, 1938, defendants located the Oregon Fraction Claim and proceeded to sink a shaft and take out gold therefrom. Plaintiff brought this suit in unlawful detainer. A jury rendered a verdict in favor of plaintiff for the possession of the land and for damages in the sum of $1136, this being the amount of gold admittedly extracted by defendants without deduction for the cost of mining. Motions for a directed verdict, for judgment notwithstanding the verdict and for a new trial were denied. Defendants have appealed from the judgment.

The Oregon claim intersects the East Extension diagonally, but as to the part of the lode from which the gold was taken the Oregon is the junior location. No question of failure to do assessment work is involved, for plaintiff had filed his notice of intention to hold the claim for the year 1938–39 as well as for previous years.

Defendants contend that it was proven at the trial that there had been no discovery upon the East Extension and also that the claim had been abandoned. As to these contentions, there was a conflict in the evidence which was resolved in plaintiff's favor by the verdict of the jury. The defendants further contend that the lines were not distinctly marked upon the ground, so that they could be readily traced. They rely not only on the nature of the monuments and markings, but also upon the difficulty in tracing such lines as existed in view of the fact that certain ones were too long. The location notice called for 1500 feet along the course of the vein and 300 feet on each side, but a survey disclosed that

the center, north and south lines were respectively 1700, 1615 and 1970 feet and the end lines 675 and 420 feet.

Where the locator in good faith and without injury to anyone includes an excessive area within his lines, the location is voidable only as to the excess. (*Gobert* v. *Butterfield,* 23 Cal. App. 1 [136 Pac. 516].) The verdict of the jury is conclusive as to the good faith of the plaintiff, and the portion of the East Extension claim that has been mined by the defendants is near the center line of the claim. Therefore, the fact that an excessive area was included within the lines is not, as such, material.

It has been held, however, that the distance of the side lines from the center line of a lode claim may be considered in connection with evidence of insufficient marking of the lines in determining whether a junior locator had notice of a senior location. (*Madeira* v. *Sonoma Magnesite Co.,* 20 Cal. App. 719 [130 Pac. 175].) In that case it is said:

"It does not follow that the location is invalid where the locator includes within the boundaries of his claim more than the law permits. 'He is entitled nevertheless to hold to the limit which the law authorizes within the limits laid out, and only the territory embraced within the boundaries which is in excess of these limits is to be rejected.' (*McElligott* v. *Krogh,* 151 Cal. 126 [90 Pac. 823].) This rule presupposes a location which 'injures no one at the time it is made, and where it has been made in good faith.' (Lindley on Mines, sec. 362.) The mere fact, then, that in establishing his exterior boundaries, the locator has marked out too great a quantity of land does not necessarily invalidate his location. Where, however, the locator relies upon the corners he has established or has attempted to mark as *indicia* of the location of the lode or ledge, a different question may arise and a different rule may govern. If the courses are so widely separated from where they ought to be as to bear no apparent relation to the lode, i. e., are so remote as to justify a reasonable inference by one seeing the corners that they were not intended to apply to the lode in question, they would add little if any force to the claim that the law had been complied with. And this would be especially true if the notice once posted at the discovery point had disappeared or the lode line was not distinctly marked. 'If the preliminary notice is wanting there would be nothing to guide the subse-

quent locator, and the excessive location should be held worthless for any purpose.' (*Ledoux* v. *Forester*, 94 Fed. 600.)

''A subsequent locator coming on the ground and finding an uncertain marking of the discovery point and lode line and yet sufficient to arouse inquiry and require examination for exterior boundaries, would not be required to go much if any beyond the lateral limits to look for corners or other markings of the boundaries; and certainly he would not be charged with notice where the markings of the corners were so far from where they properly belonged; so obscure and lacking in permanency as in the present instances; and in a country densely covered with chaparral; and where the corners were not indicated by blazing of trees or cutting out of brush or otherwise marking their location.''

Defendants contend that the facts in the present case are similar to those in the one last cited in respect to the excessive area within the lines, the nature of the markings and the character of the terrain, and that the trial court committed prejudicial error in giving the following instructions to the jury:

''The mining statutes do not prescribe any particular or designated manner in which a location shall be marked; but it is settled that any visible marking on the ground whether by stakes, monuments, mounds or written notices claim marked can be readily traced is sufficient.''

''You are further instructed that stakes and stone monuments at each corner of the claim and at the center of each end line is a sufficient marking of the boundaries and is all that the law requires for a complete compliance with the statute in this respect.''

''Where the country is broken and the view from one corner to the other is obstructed by intervening gulches and timber and brush, it is necessary to blaze trees along the lines or cut away the brush and set more stakes at such distances that they may be seen from one to another, or dig the ground up in a way to indicate the lines so that the boundaries may be readily traced.''

The third instruction quoted was offered by the defendants, but they contend that it is inconsistent with the second, that the second is erroneous (*Taylor* v. *Middleton*, 67 Cal. 656 [8 Pac. 594]) and that the jury may be presumed to have been misled.

It is true that an instruction which is prejudicially erroneous is not cured by one which is correct if the giving of the two must have misled the jury. (*Pittam* v. *City of Riverside*, 128 Cal. App. 57 [16 Pac. (2d) 768]; *Buttrick* v. *Pacific Elec. Ry. Co.*, 86 Cal. App. 136 [260 Pac. 588]; *Torvend* v. *Patterson*, 136 Cal. App. 120 [28 Pac. (2d) 413]; *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, 281 [201 Pac. 599].) But we cannot see how the jury could have been misled to the prejudice of the defendants by the giving of the instructions, for one cannot read the three without realizing that the third explains and qualifies the rule stated in the first and second.

There is, however, a clear distinction between the facts in the present case and the ones under discussion in the case of *Madeira* v. *Sonoma Magnesite Co., supra.* In that case the senior locator had done no work upon the claim up to the time of the junior location. There was nothing to indicate to the junior locator that there existed a senior location other than the monuments, and the appellate court affirmed the judgment of the trial court in view of the peculiar circumstances of the case. Here the plaintiff had worked on the claim for years, though not to a great extent. He had resided for some months each year in a cabin on his New Ford claim, close to the East Extension. The defendants had passed his claims very often on the way to the place where they were employed and were well acquainted with plaintiff. They knew that he had located and was endeavoring to develop both lode claims. Having this actual knowledge they could not attack the locations on technical grounds. It is well settled that one who has actual knowledge of the claims of another to mineral land cannot, in good faith, relocate the land because of technical defects in the making of the location. (*Stock* v. *Plunkett*, 181 Cal. 193 [183 Pac. 657]; *Kramer* v. *Sanguinetti*, 33 Cal. App. (2d) 303 [91 Pac. (2d) 604]; *Dennis* v. *Barnett*, 30 Cal. App. (2d) 147 [85 Pac. (2d) 916]; *Kern Oil Co.* v. *Crawford*, 143 Cal. 298 [76 Pac. 1111, 3 L. R. A. (N. S.) 993].) It is true, as counsel for the parties point out, that there is a conflict in the evidence in respect to the good faith of the defendants in relocating the land but we are bound by the implied finding of the jury on this point.

█ Plaintiff brought this action for forcible entry and unlawful detainer and asked for treble damages. In awarding as damages the value of the gold proven to have been taken from the property without deducting the cost of mining and milling, the jury, in effect, awarded punitive damages. (*Lightner Min. Co.* v. *Lane,* 161 Cal. 689 [120 Pac. 771, Ann. Cas. 1913C, 1093].) █ The great weight of authority is to the effect that in such actions as this, where damages are sought for trespass upon mining property, the amount to be awarded depends upon whether the wrongful act was done wilfully and with knowledge of the violation of another's rights, or innocently and through the wrong-doer's mistaken belief as to his rights. In the one case the cost of extracting the mineral is allowed as a deduction; in the other case it is not. (*Lightner Min. Co.* v. *Lane, supra; Union Oil Co.* v. *Reconstruction Oil Co.,* 20 Cal. App. (2d) 170 [66 Pac. (2d) 1215] ; 18 R. C. L. 1256; *Pittsburgh & W. Va. Gas Co.* v. *Pentress Gas Co.,* 84 W. Va 449 [100 S. E. 296, 7 A. L. R. 901, and note].)

█ The following instruction was given the jury by the trial court:

"I instruct you that in determining the lawfulness or unlawfulness of the entry, if any, or the subsequent holding of possession, if at all, by the defendant, that the question of their good faith or their bad faith should not enter into your consideration because good or bad faith is of no concern and does not constitute an element of defense or affect plaintiff's right, if any, to recover."

In *Lightner Min. Co.* v. *Lane, supra,* it is said:

"Instruction 9 was to the effect that 'the right of the plaintiff to recover is not at all affected by the fact that the trespass was not wilful'. This would be technically correct if it meant only that the plaintiff could recover compensatory damages for a trespass not wilfully made. The right to recover exemplary damages would be affected by the fact that the trespass was wilful, if by a wilful trespass is meant a fraudulent or malicious trespass. But the right to recover compensatory damages is not affected by the fact that the trespass was not wilful. (*Maye* v. *Yappen,* 23 Cal. 306.) Hence the giving of the instruction could be prejudicial only with regard to punitive damages included in the verdict,

and the error can be sufficiently cured by reducing the judgment to the amount of damages allowed as compensation.''

Defendants contend that the instruction which we have quoted had the same effect as the one in the Lightner case and constituted prejudicial error, in view of the fact that the jury did award punitive damages. However, this instruction was given among other instructions that had to do with the right of the plaintiff to recover possession, while in the Lightner case the only issue involved was one of damages. In reference to the amount which the jury might award the plaintiff the following instruction was given:

''You are instructed that if you should find from the evidence in this case that the plaintiff, Ehrhart, was, at all times mentioned in said complaint, the owner and entitled to the possession of the property in question and that the defendants, without right, converted such property to their own use to the damage and detriment of plaintiff, then I instruct you that the general rule of damages with reference to such circumstances is that the plaintiff is entitled to recover the amount which will compensate him for all the injury or detriment proximately caused by such conversion and appropriation.

''And in this connection, you are instructed that the measure of damages, if any, which are to be awarded shall be governed by the following rule: If you should find that the plaintiff, Ehrhart, was the owner of such mine, and that the same was invaded by the defendants, Smith and Bowling, as the result of an honest mistake and inadvertence, the measure of damages would be the value of the mineral extracted from the ore, less the cost of production, but if you should find that such invasion, if any, was intentional and with knowledge of plaintiff's rights, then I instruct you that the measure of damages would be the value of the mineral extracted from the ore, without any deduction for expenses of mining, milling or production.''

The jury could not have been misled by the instructions which we have quoted. The first one correctly states in effect that the plaintiff's right to recover is irrespective of good or bad faith, while the second shows clearly how to determine the amount of the recovery, in view of the good faith or the bad faith of the defendants, as the case might be.

It was for the jury to determine whether or not the defendants acted in good faith. It may be that defendants believed that the East Extension, which they admittedly knew was claimed by plaintiff, had not been located in such a manner as to comply with the mining laws. But their good faith in entering upon the land and mining it in the absence of the plaintiff does not depend solely upon their belief. As was said in the case of *Pittsburgh & W. Va. Gas Co.* v. *Pentress Gas Co., supra*:

"Why should one be treated as acting in good faith when dealing with property as his own, when he knows all of the facts which constitute his claim, as well as the claim of his adversary, which facts, when properly construed, give him no title to the land? Such a holding would make every man a judge of the law in his own case, instead of being bound by the law as interpreted by those charged with that duty. We must therefore conclude that the defendants, when they drilled the wells on these lands, were wilful trespassers, just as much as though there had been no question but that the plaintiffs had the superior right. They could not decide the disputed question in their own favor, and then proceed with the hope that their acts would be characterized by this court as in good faith, even though their judgment upon the law of the case should not be approved."

Our conclusion is that the judgment is supported by sufficient evidence and that the record is free from reversible error.

The judgment is affirmed.

Thompson, Acting P. J., and Tuttle, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court March 8, 1940.