[Civ. No. 4120. Fourth Dist. Nov. 9, 1950.]

W. P. BETTS, Appellant, v. BEULAH H. STEPHENSON et al., Respondents.

Halverson & Halverson for Appellant.

Jess G. Sutliff, John P. McMurray and Kenneth W. Kearney for Respondents.

BARNARD, P. J.—This is an action to quiet the plaintiff's title to a group of unpatented mining claims. The defendants moved for a nonsuit on the grounds that the evidence did not show that these claims were open and unappropriated government land at the time in question; that the evidence disclosed that the discovery work was insufficient under section 2304 of the Public Resources Code; and that the locations were null and void under section 2307 of that code. In considering the motion the court stated that there was so far a failure of proof under section 2304, and offered the plaintiff an opportunity to "supply the necessary proof." The plaintiff's counsel replied "I cannot enlarge on the discovery work." The court thereupon granted the motion, and a judgment of dismissal was entered. A motion for a new trial was denied and the plaintiff has appealed from the judgment.

The history of these claims, as disclosed by the evidence, runs back to 1907. The respondents and their predecessors had been in possession for many years under various locations, an immense amount of work had been done, and a large amount of ore removed. There were several tunnels on the property, one of them some 600 feet long, and four or five buildings had been erected. The appellant had worked on the property at various times. During 1939 he operated it under a lease from the respondent Brennan, removing more than 15 tons of ore from the existing tunnels in the last half of that year. Late in December, 1939, and before his lease expired on January 5, 1940, he tried to sell the property to one Kettering. Brennan refused to sell on the terms offered by this buyer and some bad feeling developed during which Brennan ordered the appellant to stay away from the property. About that time, in a suit filed against him by another party, the appellant swore that these claims belonged to the respondent Brennan.

In August, 1941, the appellant went to the property, with two helpers, and attempted to relocate the property for him-

self. Within 60 days thereafter he did some work, making surface cuts, but he admits that this work was not sufficient to meet the requirement of section 2304 of the Public Resources Code. He did no further work until this action was tried in 1949, although he filed annual notices of suspension of work under the moratorium statutes. The appellant testified: "Brennan threatened to kill me through Kettering, why I have stayed away from the property, and we just dropped it, until I took a notion I would file suit and get the property."

The appellant first contends that the evidence shows that these lands were open and unappropriated mineral lands at the time he located the claims in 1941. He relies on the past history of the claims to show that they were mineral lands. The only argument made in this connection is that the evidence shows that no assessment work was done on these claims from 1939 until he located them in August, 1941. The only evidence pointed out to support this contention is appellant's own testimony in which he was asked whether any work had been done on these claims "for the assessment year from 1940 to 1941." He replied "No." He was then asked "Your attention was called to this fact by Mr. Hart, is that correct?" and he replied, "Yes."

■ A forfeiture of a mining claim for failure to do the annual work can be established only upon clear and convincing proof of such failure. (*Hammer* v. *Garfield Min. etc. Co.,* 130 U.S. 291 [9 S.Ct. 548, 32 L.Ed. 964].) ■ Every reasonable doubt will be resolved in favor of the validity of a mining claim as against the assertion of a forfeiture. (*Thornton* v. *Kaufman,* 40 Mont. 282 [106 P. 361, 135 Am.St.Rep. 618].) ■ Moreover, one who has not himself made a valid location cannot question the sufficiency of the assessment work done by a prior locator. (*Wilson* v. *Freeman,* 29 Mont. 470 [75 P. 84, 68 L.R.A. 833].)

It cannot be questioned that sufficient work was done on these claims during 1939, a large part of which was done by the appellant while operating under a lease from Brennan. The appellant testified that he left the property late in December, 1939, giving the keys to all of the locks to Brennan; that he did not go back to the property in 1940; that he next visited the property in August, 1941; and that he filed his location notices because he had been told by one Hart that the assessment work had not been done the preceding year. He also testified that he concluded, from his observation of the property, that the work for the preceding year had not

been done. ■ However, he testified that when he returned in August, 1941, he observed that someone had cleaned out the track in the largest tunnel for 150 feet; that they had taken out the debris from the cave-in; that they had brought in $50 worth of lumber with which to make repairs; that they had moved some dirt in another place; that they had made a trail; that on another of the claims notices had been posted that "WPB work is being done at the point of location"; that there was a little work done on another of the claims; and that the buildings on the main claim were locked. He further testified that he did not know whether or not any notice of desire to hold the claims had been filed. Not only was his conclusion that no assessment work had been done the preceding year clearly based on hearsay, but it rather clearly appears from his own testimony that more than the required amount of work had been done in the intervening year. The respondent Brennan testified, under section 2055 of the Code of Civil Procedure, that he and some other men did a considerable amount of work on these claims in 1940 but the appellant refrained from bringing out the exact amount and value of that work. While the appellant may not be bound by this, it was fully confirmed by his own testimony.

■ The appellant next contends that sections 2304 and 2307 of the Public Resources Code have no application here. It is argued, citing 58 Corpus Juris Secundum 124, section 67, that a state has no authority to add to the requirements of the federal mining laws "in regard to annual assessment work." While this may be true, a different rule applies to the discovery work, which is covered by these code sections. As pointed out in 58 Corpus Juris Secundum 90, section 43, certain discovery work, as distinguished from the annual assessment work, is usually required: "for the purpose of showing good faith and of demonstrating more clearly the existence of mineral within the limits of the claim . . . and a failure substantially to comply with such requirements invalidates the location." These sections of the Public Resources Code are applicable and effective here.

Admitting that the work thus required was not fully performed, the appellant further contends that the respondents prevented him from completing that work, and that compliance with the statute was thus excused. It is argued that within 90 days after he made his locations he "returned to resume his work, but was prevented from so doing by the defendants" and that "they had previously threatened to

kill him if he went upon the ground." No such contention was made when the motion for a nonsuit was argued. At that time the court pointed out the deficiency of the evidence in this respect and the only reply made was "I cannot enlarge on the discovery work."

The appellant, who best knew his own intention, did not testify that he had intended to complete the discovery work on the third trip. He testified: "I was there three different times. The first time we did the location work, put up the monuments. The second time I was there we did the location work. The third time I was up there Dave Staats was there as watchman over the property, . . . ." He was then asked, "Did you stop on that occasion?" He replied: "Long enough for Mr. Tautrim to get his valise." Mr. Tautrim testified that he went with the appellant on this third trip; that his wife had left a suitcase in the cabin when they were there on the second trip; that when they arrived on the third trip there was a man at the cabin on the property; that he asked this man for the suitcase and the man gave it to him "with great courtesy and very politely"; and that this was all that happened on that occasion. The appellant was later asked by his counsel "Did Dave Staats tell you that he was the watchman and that you couldn't light there—you couldn't stay there?" and he replied: "Yes." The reply to this leading question indicates that they were told they could not use the cabin, which was already occupied, but it is far from sufficient to establish the fact that they were prevented from doing any work. Neither the appellant nor anyone else testified that any threats were made on that occasion, that they attempted to do any work, or that anyone prevented them from so doing.

The only evidence of a threat is with reference to an incident which occurred nearly two years before in Los Angeles in another connection. At that time the appellant was trying to persuade the respondent Brennan to sell these claims to another party on certain terms, which he refused to do. The appellant testified that Brennan then said he would kill him if he went back on the property. That was just before the appellant's lease expired and had nothing to do with any location of claims. Moreover, any such threat was entirely insufficient to prevent the appellant from returning to the property several times a couple of years later.

The evidence rather conclusively shows that the ap-

pellant considered that he had done sufficient discovery work on his first two trips, that he still thought this work was sufficient at the time of the trial, and that his case was presented on that theory alone. It was not shown that the appellant was prevented by the respondents from doing the required discovery work, and the court correctly refused to accept that excuse for nonperformance when it was first presented on the motion for a new trial.

A careful reading of the entire record fully supports the court's conclusion that the evidence was insufficient to justify or support a judgment in favor of the appellant.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 4, 1951.