[Civ. No. 8654.   Third Dist.   Oct. 21, 1955.]

JOHN BUFALINI et al., Respondents, v. PETER J. DeMICHELIS, Appellant.

Carl E. Day for Appellant.

McLeod & McLeod, L. A. MacNicol, and E. R. Vaughn for Respondents.

McMURRAY, J. pro tem.*—Defendant appeals from a judgment impressing a trust on certain unpatented mining claims and ordering him to convey the claims to a copartnership composed of plaintiffs and defendant.

Under a written agreement dated August 29, 1951, the defendant and plaintiffs became copartners in the Midland Mining Company. Five of the plaintiffs contributed cash and the other plaintiff contributed nothing tangible. Defendant contributed a lease he held on unpatented mining claims known as Blue Star Tungsten No. 1, No. 2 and No. 3, and was designated as the active managing partner. During the existence of the partnership defendant entered into a contract for purchase of other unpatented mining claims known as the Garnet Queen No. 1, No. 2 and No. 3; this contract was dated November 20, 1952, and ran to defendant in his own name; he had previously been instructed to acquire the Garnet Queen group for the partnership and had carried on partnership negotiations wherein the Garnet Queen group was mentioned as about to be acquired by the partnership. These Garnet Queen claims are the subject of this appeal, defendant admitting that the Blue Star group was a partnership asset.

The sole issue before the trial court, admitted to be such by defendant's counsel during the trial, was whether or not defendant violated fiduciary duties owed to his copartners by acquiring the Garnet Queen group in his own name rather than for the partnership. In order to determine this issue the trial court was required to and did interpret the partnership agreement. The interpretation adopted by that court offends appellant who itemizes many contentions in this appeal. In essence, however, all of these contentions may be summarized as follows: First, that the partnership agreement must be so construed as to limit its operation and effect to the Blue Star group of claims and no others; second, that since this was a mining partnership it could not operate as to the Garnet Queen group since it had no interest or right of possession in such claims; and, third, that defendant's promise to acquire the Garnet Queen group for the partner-

---

*Assigned by Chairman of Judicial Council.

ship was without legal effect since it was an attempt to alter, by parol, a written partnership agreement (if appellant's interpretation thereof be adopted) without consideration and in violation of the statute of frauds.

It is apparent that appellant bases this appeal primarily upon his own interpretation of the partnership agreement and that his other points require such interpretation in order to survive.

The partnership agreement recites in the preamble that it is "a mining partnership to explore for, mine for, produce, market, sell and otherwise deal in tungsten, silver, gold, or any other metals, minerals or hydrocarbons which may be discovered from the operations hereinafter described"; that defendant had leased the Blue Star group of claims; and that in order to carry out the terms of said lease certain partners agree to furnish $12,500.

The agreement then proceeds to specify the name as "Midland Mining Company," its principal place of business, and then in paragraph 3: "The said mining partnership shall engage in the business of exploring for, prospecting for, mining for, producing, marketing, selling and otherwise dealing in tungsten, silver, gold, and any and all other metals, minerals or hydrocarbons or the like, and said mining partnership shall engage in such other and further businesses as a majority of the parties hereto may from time to time agree upon between themselves."

The agreement then continues to set forth the amount and method of cash contributions; that defendant shall convey the Blue Star group lease to the partnership and "shall also direct any and all services or works necessary in the actual exploration and mining for the substances hereinabove mentioned"; the method of withdrawal from the partnership; that policy matters shall be determined by majority action of the partners; that defendant shall receive reasonable compensation; the method of banking; the disposition of any cash balance from contributions; the method of sharing in profits and losses; the restrictions upon disposing of partnership interests; the method of keeping books of account; the method of terminating the partnership; the method of making further contributions; the fact that the parties form a mining partnership and are subject to Public Resources Code, sections 2351-2360; and that time is of the essence of the agreement, and operations thereunder must commence within 10 days of August 29, 1951.

Appellant aggressively asserts that to construe this agreement so as to allow acquisition of any other properties than the Blue Star claims named therein is ridiculous and in violation of all rules of interpretation. In attempting to vitiate the court's finding that paragraph 3 of the agreement indicated an intention on the part of the partners to engage in mining or developing other properties than the Blue Star group the appellant refers to the "catch-all language of paragraph 3." This type of argument reveals the appellant's general position.

He earnestly argues that the reception of evidence of the conduct of the parties was in violation of the parol evidence rule and, in the same breath, asks that a rule of interpretation be adopted which would ignore any language unfavorable to his position. This is not a generally recognized rule of interpretation.

The obligation of a court is to interpret an agreement by giving effect to all of its provisions if possible. (Civ. Code, § 1641.) A full and fair reading of the partnership agreement here can only result in the conclusion reached by the trial court, that the expressed intent of the parties was not limited to a partnership operation restricted solely to the Blue Star group.

Where, as is here the case, a court is confronted with determining the meaning of language used in an instrument one of the best guides available is found in the conduct of the parties under the subject instrument. (*Johnston* v. *Landucci,* 21 Cal.2d 63, 70 [130 P.2d 405, 148 A.L.R. 1355].)

Appellant here was instructed by the partners to obtain the Garnet Queen claims for the partnership; he had entered into negotiations on behalf of the partnership wherein the intention of acquiring the Garnet Queen claims was set forth in writing; he repeatedly told several of the partners that he could readily acquire the Garnet Queen claims for the partnership and even conducted examining geologists over the claims while acting for the partnership. The contract of purchase running solely to defendant was so prepared at his request upon his statement that because of his acquaintance with the owners it would be easier to obtain it in that form.

To now have appellant urge, as he does, that this contract of purchase is of such character as to demand his personal attention and only his is astounding. The contract of purchase is by its terms assignable.

The argument that the pleadings are so framed as

to require proof of an express trust must also fail when the pleadings are read in their entirety. It is urged that since there was no written instrument no express trust in realty can exist. The complaint is so framed as to adequately support the trial court's holding of a constructive trust. The language appellant urges as restricting the pleadings alleges that the Garnet Queen claims were acquired while there was an "express understanding" that appellant would assign and transfer the Garnet Queen claims to plaintiffs. This is not an allegation of an express trust, but, when viewed in relation to the evidence before the court, is a well supported statement of fact upon which a constructive trust may properly be invoked by the court. ▮ And no writing is necessary to establish such a trust. (*Stromerson* v. *Averill*, 22 Cal.2d 808 [141 P.2d 732].)

▮ The argument that no consideration passed from the partnership to the owners of the Garnet Queen or to defendant does not apply where, as here, a fiduciary partnership relation exists. (*Stromerson* v. *Averill, supra.*) ▮ The Stromerson case also disposes of appellant's contention that the agreement to acquire the Garnet Queen claims was invalid as within the statute of frauds. At page 815 it is said:

"It is also contended that the statute of frauds bars recovery by Averill. A constructive trust which is created by operation of law need not be in writing. (Civ. Code, § 852.)"

The various contentions of appellant relating to mining partnerships are not relevant in view of the interpretation of the partnership agreement here adopted. ▮ There is nothing in the law of mining partnerships which relieves a partner therein of the same degree of fiduciary responsibility as that of any other partner; indeed, considering the nature of mining operations, it would seem essential that the partners in such ventures should show the highest good faith and regard for the rights of their fellow venturers.

Arguments to the effect that the Garnet Queen claims were in another mining district and somewhat distant from the Blue Star claims as a basis to avoid the trust are not meritorious.

The fact that some of the partners had rejected an interest in the Garnet Queen before the partnership was formed is not persuasive in view of evidence that there was a subsequent discovery on those claims.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.