[Civ. No. 8752. Third Dist. Feb. 17, 1956.]

GRAEME K. MacDONALD, Appellant, v. MIDLAND MIN-
ING COMPANY (a Copartnership), Respondent.

Carl E. Day, Edward R. Kay and Ferrari & Ferrari for Appellant.

L. A. MacNicol and E. R. Vaughn for Respondent.

SCHOTTKY, J.—This action involves the ownership of a mining claim in Mariposa County known as ''Garnet Queen No. 3.'' Appellant commenced an action for declaratory relief against respondent and defendants Law, Hudson, Odgers and Toye, hereinafter referred to as the Law group. The defaults of all defendants except respondent were entered, and following a trial the court, sitting without a jury, found that appellant was before the court with unclean hands and therefore not entitled to any relief, and also that the location of the Law group, from whom respondent Midland Mining Company derived its right, was valid and prior to that of W. A. Neubert from whom appellant derived his right. This appeal is from the judgment entered in accordance with said findings.

The record shows that the Garnet Queen No. 3 claim was located by the Law group on June 16, 1951, but the notice of location was not recorded as required by section 2313 of the Public Resources Code, nor was any discovery work done within 90 days thereafter as required by section 2304 of that code. The discovery work was never personally done by the Law group.

In September, 1951, the Law group leased the claim to one Newcomb. Between late October and December 1, 1951, discovery work was accomplished by W. J. Barnett and another

man, both of whom were employed by the tenant Newcomb.

In November, 1951, the Law group realized that the required discovery work had not been performed and that notice of location had not been recorded, and on December 15, 1951, they recorded an amended location notice. This notice was incomplete because it made no reference to the performance of discovery work.

Plaintiff's agent and witness Burtt testified that when he surveyed the property in January, 1953, he found evidence of discovery cuts and then prepared an amended lode location notice for the Law group which was recorded on February 5, 1953. This notice stated that the discovery work had been accomplished within 90 days after the date of location. There was also testimony by Burtt refuting the positive statements of the amended notice, saying that he was confused by some "old" cuts, which testimony the trial court indicated it did not believe.

On March 30, 1953, Neubert recorded a notice of location on Garnet Queen No. 3, calling it the Garnet King Lode Claim. All of the papers were prepared by Burtt who also posted the notice, supervised the discovery work, and recorded the notice. He did this all on behalf of Neubert, just as he had done for the Law group a few weeks earlier. In both instances he was employed by plaintiff.

In November, 1952, the Law group entered into an agreement of sale with Peter DeMichelis, and in *Bufalini* v. *DeMichelis,* 136 Cal.App.2d 452, 458 [288 P.2d 934], recently decided by this court, it was held that DeMichelis held said interest in the Garnet Queen No. 3 in trust for the Midland Mining Company, plaintiff therein, defendant herein.

Appellant claims the property under his contract with Neubert on April 4, 1953.

The contention of the appellant at the trial was, and upon this appeal is, that not having performed the discovery work required by Public Resources Code, section 2304, within 90 days after posting their notice of location on the Garnet Queen No. 3 on June 16, 1951, said location by the Law group was null and void and by the terms of section 2307 the Law group was not eligible to relocate said claim within three years. That because the location by the Law group was thus null and void, the claim was open to anyone not connected with the Law group. That Neubert, through whom plaintiff derives his interest, thereafter made a valid location on the

property, and therefore Neubert's (plaintiff's) claim is paramount.

The trial court, however, held contrary to appellant's contentions, the basis of its decision being (1) that the discovery work performed by Barnett for Newcomb and the recording of the amended notice of location on February 5, 1953, all before the time when Burtt attempted on behalf of Neubert to relocate the claim, met the requirements of the statutes, (2) that Neubert's location was in bad faith because he knew that the claim had been previously located by the Law group, and his location was therefore of no force or effect, and (3) that plaintiff was in court with unclean hands because he was bound by Burtt's acts as his employer and principal.

The trial court filed a memorandum opinion which correctly states the facts as shown by the record and the law applicable thereto, and we therefore adopt the following portion thereof as part of the opinion of this court:

"To summarize; a lode had been discovered (June 16, 1951); a Location Notice had been posted on the property on the same day; sufficient discovery work was performed between late October and December 1, 1951 (by Barnett, employee of tenant Newcomb); an incomplete Notice of Location was recorded on December 15, 1951; finally on February 5, 1953 an AMENDED NOTICE meeting statutory requirements was recorded by the Law group.

"Whether the completion of these several steps was timely is the question to be resolved.

"12. Up to this point no third party questioned the ownership or the right of the Law group and no one had sought to relocate the property in his own right or on behalf of any third party. Not even Burtt, who, though employed by plaintiff in February 1953 nevertheless prepared and recorded the AMENDED NOTICE on February 5, 1953 in the name of and presumably as a friendly business gesture to the Law group, with whom, we infer, Burtt hoped to negotiate a sale or lease on behalf of his employers, the plaintiff and the plaintiff's associates.

"13. On March 29, 1953 Neubert recorded a Notice of Location on Garnet Queen No. 3, calling it the Garnet King Lode Claim.

"All of the Neubert papers were prepared for him by Burtt. Burtt also personally posted Neubert's notice on the

property. Thereafter Burtt supervised the discovery work and personally recorded the notice, all on behalf of Neubert, just as he had done for the Law group a few weeks earlier. In both instances he was employed by plaintiff.

"14. On April 4, 1953, Neubert contracted to sell his interest in the Garnet King to plaintiff.

"In his brief defendant likens the Law group, Burtt and plaintiff to peas in a pod and charges them with bad faith in connection with Neubert's purported location. Defendant suggests that Law, who is employed by Neubert at the latter's store at El Portal, and the associates of Law have played ball with Neubert and plaintiff because they feel they have more to gain that way than by living up to the terms of their lease on the Garnet Queen No. 3 with DeMichelis, trustee for defendant. (Plaintiff's Exhibit 7.)

"This is denied by the Law group, each of whom testified that his willingness to have Neubert relocate the Garnet Queen No. 3 and his reason for not defending this action in which each was served as a defendant is because he believed the Law group had forfeited its ownership by failure to do the discovery work within 90 days of locating the claim.

"The court deems it unnecessary to labor this charge so far as the Law group and Neubert are concerned. But it is clear that it is Burtt (1) who caused the Law group to believe that their location was invalid, after causing them to take the exact opposite position two months earlier, (2) who was the guiding spirit in immediately causing Neubert to relocate the claim, (3) who engineered the sale by Neubert to plaintiff and (4) who at all times herein mentioned knew that the Law group had sold their interest in the Garnet Queen No. 3 to Peter DeMichelis, since held by this court to be the trustee of said interest for the benefit of the defendant herein.

"In short, Burtt was determined, by whatever means, to obtain the Garnet Queen No. 3 for his employers. The evidence is silent to what extent plaintiff was aware of Burtt's activities. However, as Burtt's employer and principal, at all times herein mentioned, plaintiff is bound by Burtt's acts.

"In conclusion on this point, the court finds that by reason of Burtt's activities the plaintiff is not before this Court with clean hands. Such being the court's view of the position in which the plaintiff stands, and this being a proceeding in equity (*Adams* v. *Cook*, 15 Cal.2d 352 [101 P.2d 484]), the

court declines to make the declaration prayed for in the complaint.

"Much more could be said on the matter of clean hands if this court were permitted to take judicial notice of its record in *Bufalini* v. *DeMichelis* No. 3423 decided by this court shortly before the institution of this action, and of the chronology of events as reflected by the record in that case and this.

"*Independent of the question of clean hands, the court holds as a matter of law,* that having performed the discovery work (Section 2304 and see testimony of Barnett), and having recorded their AMENDED LOCATION NOTICE as required by section 2313 prior to the time that Burtt attempted on behalf of Neubert to relocate the claim, the Law group thereby perfected their location and now have the superior right to the Garnet Queen No. 3 notwithstanding the language of section 2307.

"In support thereof the Court points out:

"1. While section 2307 provides that a location shall be null and void if the requirements of section 2304 (performance of discovery work within 90 days) are not complied with, nevertheless section 2310 provides that

" 'If *at any time* the locator . . . apprehends that his original notice was defective . . . *or that the requirements of law had not been complied with before filing* . . . he may file an amended notice . . . if such amended location notice does not interfere with the existing rights of others at the time of posting and filing the amended location notice.' [Emphasis added.]

"The things a locator must do to satisfy the requirements of law are:

" (a) Discover a vein or lode and post a notice containing the information called for in section 2301.

" (b) Define the boundaries and erect his markers (2302).

" (c) Do his discovery work within 90 days (2304 but see 2310).

" (d) Record within 90 days (2313 but see 2310).

"Note, that section 2310 does not state that the locator shall take corrective measures within 90 days of posting his original notice. *No time limit is prescribed* except that no third party rights shall have come into existence in the meantime.

"In this case it is undisputed that *all* of the steps enumerated in subdivisions (a) to (d) above were *completed*

before Burtt filed Neubert's Notice of Location, i.e. before third party rights came into being.

"The court concludes that the correct interpretation of Section 2310 is that, if at *any time,* (in this case from June 1951 to February 1953) a locator apprehends that he failed to meet *the requirements of the law* (in this case his discovery work required by 2304) before he recorded his location notice, then he may cure the defect by performing the discovery work and then record an amended location notice provided a third party has not in the meantime acquired rights in the property.

"2. In declaring a location null and void where the locator has failed to comply with the requirements of sections 2301, 2, 4, 5, or 6, section 2307 draws no distinctions and makes no exceptions.

"Thus, under plaintiff's theory, a failure to meet the requirements of section 2301 by first discovering a vein or lode in place, and then to meticulously follow subdivisions (a) to (e) of said section would render the location null and void and, under plaintiff's theory, the defect could not be cured by subsequent compliance with section 2310. So too with respect to a failure to meet the requirements of the other code sections referred to in section 2307.

"To so hold is simply to read section 2310 out of the law. This we cannot do. The court is bound, if it be possible, to reconcile and give meaning to what may appear to be a conflict in the statutes.

"'Thus it has been held that a code section which deals with but a single subject must be construed in its entirety. that the provisions of the entire code—or at least all such provisions as relate to the same subject matter—must be examined in order to ascertain the meaning of the language of one section; and that the various sections of a code should be read together and harmonized if reasonably possible, so that all may stand.'

"If section 2310 means anything it means that *any* defect in the location may be corrected at any time provided *third party rights have not intervened.* So construed, sections 2307 and 2310 may each stand, in harmony.

"3. Section 2321 deals with the failure to perform the annual assessment work of $100 within the time required by law and provides that such failure
'shall disqualify such locator from relocating . . . the original location . . . or any part thereof . . . within three years

after the date of his original location, and any attempted relocation thereof by any of the original locators shall render such location void.'

"This is substantially the same language as 2307. Yet it has been uniformly held that a failure to perform the annual assessment work within the time prescribed by law does not work a forfeiture—as plaintiff would have the court do in this case—so long as the assessment work is resumed before a third party relocator has perfected his claim.

" '. . . a failure to do so (annual assessment work) does not ipso facto forfeit his claim but only renders it subject to loss by relocation. The law is clear that no relocation can be made if work be resumed after default and before such relocation.'

*Wiltsee* v. *Utley*, 79 Cal.App.2d 71 [179 P.2d 13].

*Pharis* v. *Muldoon*, 75 Cal. 284 [17 P. 70].

"The court is aware that the U. S. Statute providing for $100.00 of annual assessment work makes express provision for the original locator holding his claim against a subsequent locator where the former resumes his assessment work before the subsequent locator has completed his location, (*Clarke* v *Mallory*, 22 Cal.App.2d 55 [70 P.2d 664]) for which reason cases dealing with a failure to do assessment work may be distinguished from the instant case. Nevertheless, the court notes the strong parallel between sections 2321 and 2307 and the court cites the assessment work cases as indicating a policy of liberality in favor of the original locator whose rights shall not be defeated by a failure to meet statutory requirements in locating, and thereafter retaining, his claim where he cures the defect before rights of subsequent locators have been perfected.

"4. In *Stock* v. *Plunkett*, 181 Cal. 193 [183 P. 657], the Court held that the claim of the first locator was valid against a subsequent locator with notice where the first locator's notice was *undated* though the statute required that it be dated.

"Under plaintiff's theory an original locator who overlooked dating his original location notice (one of the require-ments of section 2301) would thereby cause his location to be null and void. And though, pursuant to section 2310, he cor-rect his oversight almost immediately, nevertheless because of section 2307 his amended location notice would avail him nothing since, according to plaintiff his location was null

and void in the first instance. We do not believe the legislature intended any such harsh result.

"5. A failure to record his notice of location within the statutory period has been held not to work a forfeiture.

> *Dripps* v. *Allison's Mines Co.,* 45 Cal.App. 95 at 103 [187 P. 448].

"6. Attention is directed to *Schlageter* v. *Cutting,* 116 Cal. App. 489 [2 P.2d 875], where a close parallel is noted between the facts of that case and the instant case.

See also 58 Corpus Juris Secundum, pages 80 and 89.

"7. The following two rules, consistently applied by the courts to disputes over mining claims, support the Court's conclusion in this case. They are:

■ "A. *Liberal Construction of Statute Where there is Substantial Compliance.*

"It was held in *Betts* v. *Stephenson,* 100 Cal.App.2d 361, at 363 [223 P.2d 651] that:

" 'Every reasonable doubt will be resolved in favor of the validity of a mining claim as against the assertion of a forfeiture.'

"And in *Kramer* v. *Sanguinetti,* 33 Cal.App.2d 303 [91 P. 604], it was held that:

" 'A statute specifying the requirements necessary for a valid location of a mining claim as between conflicting claimants should receive a liberal construction.'

See also 58 Corpus Juris Secundum, page 79.

■ "B. *One having Knowledge of Another's Claim Cannot in Good Faith Avail Himself of Technical Defects.*

" 'It is well settled that one who has actual knowledge of the claims of another to mineral land cannot, in good faith, relocate the land because of technical defects in the making of the location.'

> *Ehrhart* v. *Bowling,* 36 Cal.App.2d 503 [97 P.2d 1010].

" 'Every reasonable doubt will be resolved in favor of the validity of a mining claim as against the assertion of a forfeiture.'

> *Betts* v. *Stephenson, supra.*

" 'Good faith confronts any subsequent locator who enters upon the actual possession of a senior locator's land for the purpose of initiating a claim to the same ground, although the senior location be invalid, and when such entry is in bad faith such intrusion constitutes a naked trespass.

> *Brown* v. *Murphy,* 36 Cal.App.2d 171 [97 P.2d 281].

"8. Finally, plaintiff has cited no case, and the Court has found none, which holds that a forfeiture takes place where the original locator corrects his defects (whatever they may be) *prior* to the time a relocator has made his relocation."

We believe that the record amply supports the findings of the court as to the factual situation and we believe also that the court has correctly construed sections 2307 and 2310 of the Public Resources Code. We cannot agree with appellant's contention that the provisions of section 2307 prevented respondent from validating its location by the filing of an amended notice as provided in section 2310 prior to the time that notice of location upon which appellant relies was filed. ■ The two sections must be considered together and harmonized, if possible. To agree with the contention of appellant would in our opinion be to adopt a construction which is unnecessarily harsh and not in consonance with the liberal interpretation of the mining statutes which has so frequently been proclaimed by both state and federal courts. As stated by the trial court, "if section 2310 means anything it means that any defect in the location may be corrected at any time provided third party rights have not intervened."

■ The record shows that in the instant case the amended notice upon which respondent relies was recorded on February 5, 1953, and the notice of location upon which appellant relies was recorded on March 30, 1953. Therefore, the court correctly determined that respondent was the owner of and entitled to the possession of said mining claim.

■ The record also supports the findings of the court that the notice of location made by Neubert on behalf of appellant was made in bad faith and that appellant was not before the court with clean hands. In view of the fact that an action for declaratory relief is an equitable action, these findings alone would be sufficient to support the denial of any relief to appellant.

No other points require discussion.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied March 15, 1956, and appellant's petition for a hearing by the Supreme Court was denied April 11, 1956.