[Civ. No. 9298.   Third Dist.   Mar. 27, 1958.]

LOIS L. PARSONS et al., Respondents, v. PETE KAZANGE et al., Appellants.

Victor L. Huber for Appellants.

Alan H. Thieler for Respondents.

SCHOTTKY, J.—Defendants above named have appealed from a judgment quieting the title of plaintiffs to two unpatented placer gold mining claims known as Atlas Number 1 and Atlas Number 2.

The record shows that the claims were originally located in 1920. In 1942, a John Finlayson and his wife acquired an interest in the claims and thereafter performed the necessary assessment work through the mining year ending July 1, 1950. Both claims were open for location after July 1, 1951. On July 1, 1951, a Vernon Aaserude and Raymond Minners posted notices of location on both claims. The notice on Atlas Number 2 was posted in a berry box nailed to a tree. The notice on Atlas Number 1 was nailed to a tree in a similar fashion, though it may have been placed in a tobacco can. Both notices were faulty. The descriptions encompassed more land than was claimed. The notice as to Atlas Number 2 claimed only 40 acres but the description encompassed an area of 160 acres. On August 18, 1951, the locators and their wives posted amended notice of location as to Atlas Number 1. This time they claimed a total of 70 acres. The amended location notice as to Atlas Number 2 was signed by the locators and their wives and an Anna Berg and a Terry Morrill. The amount of land claimed was 105 acres. Aaserude testified that he and Minners performed the required discovery work on each claim by making a cut or digging a trench from each of which an estimated seven cubic yards of material were removed. Notice of the discovery work on each claim was

recorded on September 22, 1951. Proof of performance of assessment work was made for the year ending July 1, 1953. In 1954 respondent Parsons performed the annual assessment work at Minners' request.

In September, 1954, both claims were quitclaimed to respondents herein. The deed to Atlas Number 1 is executed by Raymond E. Minners, Jacqueline Minners, S. Vernon Aaserude and Dorothy Aaserude; the deed to Atlas Number 2 by the same four persons plus Anna Berg and Terry Morrill. A name is blocked out in the deed to Atlas Number 2.

Appellant Pete Kazange and his wife testified that they located a claim in June, 1953, and performed the necessary discovery work. This claim occupies part of the territory occupied by Atlas Number 1 and Atlas Number 2. They also testified that they never saw Aaserude or Minners on the Atlas claim in 1951 nor did they ever see their location notices or any evidence of work done by them.

Appellants contend that respondents' predecessors in title, Minners and Aaserude, did not make valid locations on the two claims. They first contend that the location notices were not properly posted. Public Resources Code, section 2303, requires that a placer claim location be made "(a) By posting thereon, upon a tree . . . a notice of location, containing the name of the claim, name of the locator or locators, date of location, number of feet or acreage claimed, and such a description of the claim . . . as will identify the claim located." Mr. Aaserude testified that the notices were posted. He testified that the notice for Atlas Number 2 was in a box nailed to a tree on the rim of the hydraulic pit and that the notice for Atlas Number 1 was posted in a similar manner. While appellants testified they never saw either notice this merely created a conflict for the trial judge to resolve.

Appellants next contend that the location notices were invalid because an excess amount of land was included therein. The original notices were faulty because the description encompassed more acres than the 40 allowed and claimed by the notice. Amended notices were filed within 90 days, and even if the original notice was defective the amended notice corrected the defect before appellants located their claim. Appellants, however, argue that since the amended notices included additional names not on the original the amendment could not correct the defect. While an amended notice cannot add new ground (*Clarke* v. *Mallory*, 22 Cal.App.2d 55 [70 P.2d 664]), we think it may be treated as an amended notice

as to the old locators and an original notice as to the added names as long as the rights of others are not prejudiced thereby (*Thompson* v. *Spray,* 72 Cal. 528 [14 P. 182]), and as such could add land.

Appellants also contend that the locators did not comply with the provisions of section 2305 of the Public Resources Code which requires that where a claim consists of more than 20 acres a locator shall perform at least one dollar's worth of work for each acre included. There was evidence that a road approximately 100 feet long was constructed on the claims in the fall of 1951 and that it gave access to the claims. While the work was not done by the locators it was done with their consent and they received the benefit of it. The amount of land covered by the claims was approximately 175 acres, and while there was no precise evidence as to value of the road construction work we believe that the trial judge could reasonably conclude that it was in excess of $175. For as stated in *Estate of Reinhertz,* 82 Cal.App.2d 156, at page 160 [185 P.2d 858, 186 P.2d 755]: "In the case of services of a nontechnical nature, such as here involved, the judge may fix the value from a description of the services performed bringing to bear his own general knowledge and is not necessarily bound by express evidence of the value of the services performed. [Citing cases.]" And in *Johnson* v. *Snyder,* 99 Cal.App.2d 86 [221 P.2d 164], the court, in affirming a judgment allowing $400 for the removal of fixtures from leased premises, stated, at page 90: "There is no express testimony of the cost of removing the fixtures but for services of a commonplace or nontechnical character the trial judge can call on his own general knowledge of their value."

Appellants also claim that Aaserude's testimony that the discovery work on the claims was done by removing seven cubic yards from each in two working days is unbelievable because it is highly improbable that two men could do the work in the time it purportedly took. The trial court believed the witness and this court cannot hold that the evidence is unbelievable as a matter of law.

Appellants also argue that the discovery work would not qualify as such even if it were done. The testimony of Aaserude was that they removed the dirt to get down to bedrock. The actual dirt removed was not panned. The term "discovery" as applied to a placer claim means the acquirement of knowledge that the claim is reasonably valuable for

such mining. (58 C.J.S., Mines and Minerals, p. 88.) ▮ Mr. Aaserude had previously found evidence of gold on Atlas Number 1. There were indications of prior mining operations and it was his opinion that the property could be operated profitably. As to Atlas Number 2, he had panned over there, found colors and saw evidence of previous mining activities. This testimony was sufficient to sustain an implied finding that a discovery was made by respondents' predecessor in interest and the removal of 7 cubic yards of material could comply with the requirements of section 2304 of the Public Resources Code which provides: "(b) In lieu of the discovery work required by paragraph (a) of this section, the locator of a placer mining claim may, within ninety days of the date of location, excavate an open cut upon the claim, removing from the cut not less than seven cubic yards of material." Furthermore, it has been held that it is not necessary that discovery be made in the discovery shaft, and as stated in American Mining Law, Bulletin Number 123, at page 355: "The discovery shaft or its equivalent should disclose mineral-bearing rock therein but it has been held that discovery may be made elsewhere within the location and validate it."

▮ The final attack of appellants is on the validity of the quitclaim deed to Atlas Number 2. Appellants claim that it is invalid because respondent Parsons' name appears as a grantor rather than a grantee and a signature was blocked out. An examination of the deed discloses that Parsons' name does appear before the words "parties of the first part." However, it is clear that she was intended to be a grantee or a party of the second part. As far as the blanked out signature is concerned it may not avail appellants. The deed was signed by all the grantors. The deed is not void as far as third parties are concerned. ▮ A grantor may make such alterations on a deed as he desires before delivery. The deed as delivered had the blanked out signature on it. The deed, therefore, would not be void and respondents could rely on it to prove their right to the mining claim. (4 Tiffany on Real Property (3d ed.), p. 85; *Miller* v. *Williams,* 27 Colo. 34 [59 P. 740].)

▮ It has frequently been proclaimed by both state and federal courts that mining statutes should be liberally construed and that every reasonable doubt will be resolved in favor of the validity of a mining claim as against the assertion of a forfeiture. (*MacDonald* v. *Midland Mining Co.,* 139 Cal. App.2d 304, 312 [293 P.2d 911].)

As is not unusual in actions involving mining claims the evidence in the instant case was highly conflicting. The case was tried by an experienced trial judge in a county in which mining has always been one of the major activities, and it was for him to resolve the conflicts in the evidence. While the evidence might have been more specific as to certain issues, we believe that, taking the record as a whole, there is substantial evidence to support the conclusion of the trial court that there was a substantial compliance with the mining statutes by respondents and their predecessors in interest.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.