[Civ. No. 5601. Fourth Dist. May 1, 1957.]

IRWIN H. MANDEL, Appellant, v. GREAT LAKES OIL
AND CHEMICAL COMPANY (a Corporation) et al.,
Respondents.

George L. Hecker and Nathan Schoichet for Appellant.

Charles L. Gilmore for Respondents.

GRIFFIN, J.—Plaintiff and appellant, Irwin H. Mandel, brought this action against defendants and respondents Great Lakes Oil and Chemical Company, a corporation (hereinafter referred to as Great Lakes) et al., to quiet title to a certain mining claim known as Triumph Number 1, consisting of uranium and other ore-bearing minerals. This claim was mainly superimposed over Number 1 and Number 5 of 10 such claims designated as Kergon Numbers 1 to 10 inclusive, previously located by defendants Jack Kerns and W. T. Waggoner in 1954 on government lands in Kern County, at a time when said lands had been, for power site purposes, "reserved from entry, location or other disposal under the laws of the United States until otherwise directed." (Federal Power Act of June 10, 1920 [16 U.S.C.A. p. 614, § 818], 41 Stat. 1075, § 24.) This land was restored for entry on April 28, 1955, effective June 3, 1955, at 10 a.m. The fact that it had been withdrawn was not discovered until the locators had otherwise fully complied with the law in reference to location, discovery work, building monuments, setting up corner posts, recording notices of such claims, had entered upon the claims, particularly Number 1 and Number 5, and had tunneled, drilled holes into and alongside a uranium-bearing vein extending partially through these two claims, and over which plaintiff's claim was subsequently placed on June 3, 1955.

On October 14, 1954, there was assigned to defendant Great Lakes the leasehold interest of Kerns and Waggoner in said

property having an alleged value of $1,000,000. Great Lakes entered upon the claims, and fenced portions of them. Uranium ore was mined and deposited in a dump which was about 12 to 25 feet from the main highway passing by said mining property. There were other improvements installed and erected, which were valued at $80,000 at the time of trial. Practically all of these improvements were plainly visible to persons viewing the property from the road or entering upon the premises.

Upon discovery of the fact that this land was not open to location at the time, and since the government needed and was contracting for the output of all uranium, Great Lakes was instrumental in having the land restored so defendants' rights and interests could be protected. Accordingly, an order was obtained under the Federal Power Act for restoration of said lands for disposition under the Public Land Laws, as of June 3, 1955, at 10 a.m. Defendants then made prearranged, definite plans to locate or relocate these same 10 claims on the date and hour fixed. Kerns and Waggoner, in order to remove any technical objections that might arise, had prepared by defendant Great Lakes, in its office in Los Angeles, in advance of June 3, a separate notice of location of each claim, 1 to 10 inclusive, describing them in particular, and they were forwarded to Kerns and Waggoner, who were at the claims. Shortly before 10 a.m. these notices were signed by two witnesses and then by Kerns and Waggoner. Defendants had obtained two watches, accurately set, and had arranged for a blast of dynamite to discharge exactly at 10 a.m. so these notices could be placed on the respective locations on the exact minute. The same discovery monuments previously set up as the points of discovery were used. Respondent Kerns was in the county recorder's office in Bakersfield, about 30 minutes driving time from said claims, at the hour of 10 a.m. of said day and recorded copies of the notices posted. No trespassing signs were erected.

Plaintiff learned that this land was being restored on June 3, 1955, at 10 a.m. and apparently learned of defendants' predicament. He, with several others, started out a day or two before with a Nucleometer (a radiation detection instrument) to locate uranium ore bearing land. He claims he detected high readings in this area and made a griding of them; that on June 2, he had taken some rock out of the same area which had fluoresced and which he recognized as autunite; that some months before February, 1955, he had been on the

same land and had picked up some mineral bearing ore on which he had a radiometric assay made and he claimed that he had found a type of uranium-bearing ore in place; that he was able to read a Nucleometer and such instruments and had staked out previous uranium claims; that he had in mind the fact that the area immediately surrounding his claim here involved had been developed for uranium mining and that uranium had been found and was being mined in the area; that he returned on June 3rd, five or six minutes before 10 o'clock, walked upon the property, took further readings, compared them, and determined the point of discovery. This point was about 40 or 50 feet from the deposit of uranium ore placed there by the mining operations. He claims that at 10 a. m. he dug a post hole, signed a notice of location, had it witnessed by two witnesses, attached a can to a 4 by 4 post placed in the hole, and placed a notice in the can "a few minutes" thereafter.

It further appears that plaintiff made some error in the description of the property claimed which was later discovered. On June 15, he filed and recorded an amended location notice and within 60 days after June 3rd, by stipulation of respective counsel and order of the court, plaintiff went upon the ground, marked the boundaries of his alleged claim, dug his discovery pit, and filed a statement of the marking of the boundaries and the performance of discovery work in the county recorder's office on September 1, 1955. Each accused the other of claim jumping. It also developed that defendants found other notices posted by others the day before, but they were dated June 3, 1955, at 10 a.m., and hidden in cans in various places on the property. They were removed by defendants on June 2nd. Plaintiff left the property, drove to the county recorder's office and recorded a copy of his notice of location. Thereafter defendants displaced plaintiff's 4 by 4 post and threw away his notice.

Apparently defendant Waggoner, the corporation agents, and many deputy sheriffs and officers were present witnessing these proceedings. It rather indicates that plaintiff, or other persons, alerted the television and moving picture operators in this area of the contemplated action. They were all present and pictures were taken. The officers were successful in maintaining peace. Defendants' attorneys advised defendants not to interfere with plaintiff's activities up until 10 a.m., and after defendants had posted their notices, they could consider plaintiff a trespasser. Much publicity followed this occur-

rence with the headline: "CLAIMS STAKED—COURTS NEXT." Such is the result.

Plaintiff's main contentions on this appeal are (1) That the location and occupancy of defendants, prior to the effective date of the restoration order, were ineffective to give defendants any superior or possessory rights, citing such authority as *Minner* v. *Sadler*, 59 Cal.App.2d 590 [139 P.2d 356] ; *Hendrickson* v. *California Talc Co.*, 55 Cal.App.2d 467 [130 P.2d 806] ; *Kendall* v. *San Juan Silver Mining Co.*, 144 U.S. 658 [12 S.Ct. 779, 36 L.Ed. 583] ; 16 U.S.C.A. § 818; and *Belk* v. *Meagher*, 104 U.S. 279 [26 L.Ed. 735]. (2) That plaintiff made a sufficient discovery preceding the location of his claim, sufficient to meet the requirements of the law, and that defendants failed in this respect. He argues that defendants could not base their claim on a relocation or adoption of prior discovery, citing Public Resources Code, section 2301; *Cascaden* v. *Bortolis* (C.C.A. 9), 162 F. 267 [89 C.C.A. 247, 15 Ann.Cas. 625] ; and *Kramer* v. *Gladding, McBean & Co.*, 30 Cal.App.2d 98 [85 P.2d 552]. (3) That as between conflicting claims, priority of location, not posting, is the determining factor, citing *Creede & Cripple Creek Min. & Mill. Co.* v. *Uinta Tunnel Min. & Transp. Co.*, 196 U.S. 337 [25 S.Ct. 266, 49 L.Ed. 501] ; *Belk* v. *Meagher*, 104 U.S. 279 [26 L.Ed. 735] ; *Union Oil Co. of Calif.* v. *Smith*, 249 U.S. 337 [39 S.Ct. 308, 63 L.Ed. 635] ; and *Duffield* v. *San Francisco Chemical Co.*, 205 F. 480 [123 C.C.A. 548]. (4) That defendants are in court with unclean hands and lacking in good faith. (5) That the trial court erred in refusing to admit in evidence two exhibits offered (Nos. 29 and 30). And (6) That the evidence is not sufficient to support the findings and that those made were predicated upon unconflicting evidence and are against the law.

It is defendants' position: *1.* That when land of the United States is in the possession of one who is mining it, a third party may not intrude to locate a mining claim upon it, citing such authority as *Cosmos Exploration Co.* v. *Gray Eagle Oil Co.* (C.C.A. 9), 112 F. 4, 13 [50 C.C.A. 79, 61 L.R.A. 230] aff. 190 U.S. 301 [23 S.Ct. 692, 47 L.Ed. 1064] ; *Hendrickson* v. *California Talc Co.*, 55 Cal.App.2d 467 [130 P.2d 806] ; and *Capron* v. *Van Horn*, 201 Cal. 486, 497 [258 P. 77]. *2.* That to establish the validity of a lode mining claim, it is necessary that there be proven a discovery by the locator of a vein or lode of rock in place bearing valuable minerals, citing such authority as *Gwillim* v. *Donnellan*, 115 U.S. 45,

47 [5 S.Ct. 1110, 29 L.Ed. 348]; *Tuolumne Consol. Min. Co.* v. *Maier*, 134 Cal. 583, 585 [66 P. 863]; *Garibaldi* v. *Grillo*, 17 Cal.App. 540 [120 P. 425]; and 30 U.S.C.A. p. 47, § 23. *3.* That plaintiff's attempted location was invalid and defendants' location was valid and prior in point of time to that of plaintiff. And *4.* That the land was not vacant public land and plaintiff, under the circumstances, was lacking in good faith in coming upon the property and attempting to locate his mining claim, citing *Miller* v. *Chrisman*, 140 Cal. 440 [73 P. 1083, 74 P. 444, 98 Am.St.Rep. 63]; *Newhall* v. *Sanger*, 92 U.S. 761, 763 [23 L.Ed. 769]; *Tweedy* v. *Parsons*, 217 Cal. 447 [19 P.2d 497]; *Little Sespe Consol. Oil Co.* v. *Bacigalupi*, 167 Cal. 381, 385 [139 P. 802]; and *Noonan* v. *Caledonia Gold Min. Co.*, 121 U.S. 393 [7 S.Ct. 911, 30 L.Ed. 1061].

The trial court found generally in favor of defendants and that plaintiff had not met the burden of establishing his title or right of possession to the claim as against these defendants.

It is a well-established rule of law that plaintiff has the burden of proof in a quiet title action involving the possessory right to mining claims and must stand upon the strength of his own title and not upon any weakness of his adversary (*McInerny* v. *Allebrand*, 107 Cal.App. 457, 467 [290 P. 530].) The court specifically found that plaintiff's posting and locating of the claims involved on June 3, 1955, was at a time at least eight minutes subsequent to 10 a.m.; that plaintiff's allegation in his complaint that he was the first and sole discoverer and locator of said claim on said date was untrue; that by reason of the order of restoration plaintiff had the right to go upon the land for the purpose of exploring the same and to locate his mining claim and defendants also had such right; that the ''pulling up and carrying away of plaintiff's discovery post and marker was wrongful.'' The judge stated, however, he considered the facts of the case as though they still remained in the former condition. He then found in respect to the allegations of the answer of Kerns and Waggoner generally that they were true; that these defendants, on June 3, 1955, at 10 a.m. were in actual and lawful possession of said claims, had been in open, notorious and visible possession of them a long time prior thereto, had discovered veins or lodes of uranium bearing materials, had mined and stockpiled the ore, and had previously located and performed all necessary work required by the State necessary to comply with the law in reference to these claims had the land been

open for location; that defendants did, on June 3, 1955, re-discover and locate at exactly 10 a.m. of said day all of the lands described in plaintiff's complaint, duly recorded notice thereof, performed all discovery work required by law, properly marked and designated all boundary lines, and did erect proper boundary markers and end line markers. It then found defendants' allegation that plaintiff's entry upon said claims was not in good faith to be true; and that he made no discovery of any vein or lode or other material than the observation of the stored ore and material upon the surface of the ground previously extracted through the efforts of defendants. The finding then was that defendants now properly assert ownership and possession and have been the owners thereof since June 3, 1955, at 10 a.m.; that the entry of plaintiff upon the ground at that time was not authorized, was clandestine and not made in good faith. Judgment went for defendants.

 The general principle of law, as drawn from the authorities above cited, is that the location of a mining claim is not valid and is of no force and effect unless the lands and minerals involved are, at the time of such location, in fact subject to such appropriation under the mining laws, and that a mining location would be void *ab initio* if made at a time when the area covered by the location was included in a withdrawal which operated to preclude location, entry and purchase, under the mining laws, and that before such withdrawn lands can be made subject to location, entry and purchase under the mining laws, they must be restored from the withdrawal and returned to the original status as vacant, unwithdrawn, and unappropriated public land. Defendants concede this general rule. As between the government and the claimed locator the right to possession comes only from a valid location and if there is no location there can be no possession under it. (*Belk* v. *Meagher,* 104 U.S. 279, 284 [26 L.Ed. 735].) The question here presented was considered by this court in *Hendrickson* v. *California Talc Co., supra.* [Hearing denied.] It was there said, at page 471:

"There is no question that the attempted location of this claim . . . was void as between the locators and the government . . . and that the same would be void as to third parties who acquired rights in the land. . . . Even in such cases the general rule is that until a valid entry is made by another a mere occupancy of a mining claim, continued in good faith, may lead to a valid location and only the government can

complain of such occupancy. . . . Even as against third parties the rights of an occupant were recognized in *Capron* v. *Van Horn,* 201 Cal. 486 [258 P. 77]. In that case the defendant settled upon land at a time when an order withdrawing it from entry was in force. The court there said: 'However, the fact that defendant's entry upon the land was unauthorized would not prevent his occupancy from becoming lawful if, *before any right could vest in a third person,* the withdrawal order should be revoked and the land again restored to settlement and entry while occupied by the defendant.' " (Italics ours.)

*Donley* v. *Van Horn,* 49 Cal.App. 383, 391 [193 P. 514], is to the same effect, and it is there said:

"But if, during the occupancy of land that, for any reason, has been withdrawn from settlement and entry, it again is thrown open to settlement, the settler's occupancy ceases to be unlawful, it immediately becomes lawful, he no longer is a trespasser or intruder, and the land so occupied by him immediately ceases to be within the category of 'vacant' land."

See also *Capron* v. *Van Horn,* 201 Cal. 486, 497 [258 P. 77]; *Capron* v. *Montgomery,* 114 Cal.App. 631 [300 P. 149]; *Capron* v. *West,* 114 Cal.App. 633 [300 P. 149]; *Noonan* v. *Caledonia Gold Min. Co., supra; Butte & Superior Copper Co.* v. *Clark-Montana Realty Co.,* 249 U.S. 12 [39 S.Ct. 231, 63 L.Ed. 447]; and *Kendall* v. *San Juan Silver Min. Co., supra.*

The determining question, therefore, as we view it, relates to the time and the sufficiency of defendants' claimed discovery and proof as compared to that of the plaintiff. As to the time, there is substantial evidence to support the finding of the trial court that defendants were first in point of discovery and posting of notice of discovery, as well as the recordation of such notice.

Although it appears that defendants' notices of location were actually signed by the witnesses and defendant locators a few minutes before 10 a. m., the act of posting them was made by the locators or their authorized agent and was in the presence of the witnesses who signed on the day indicated. There was sufficient ratification of their acts. (17 Cal.Jur. p. 300, § 16, and cases cited.) For all intents and purposes there was a substantial compliance with the law and a valid notice of discovery was posted. (17 Cal.Jur. p. 330, § 33; 17 Cal.Jur. p. 325, § 30, and cases cited.)

While it may be questioned whether plaintiff actually made a valid and bona fide discovery of a *vein or lode* within the

meaning of section 2301 of the Public Resources Code (West's Annotated California Codes), prior to his claimed location, it is apparent that defendants had previously made a valid bona fide discovery and produced uncontradicted evidence of such discovery at the time the notice of location was posted. (*Platt* v. *Bagg,* 77 Ariz. 214 [269 P.2d 715] ; *Gwillim* v. *Donnellan,* 115 U.S. 45, 47 [5 S.Ct. 1110, 29 L.Ed. 348] ; *Tuolumne Consol. Min. Co.* v. *Maier,* 134 Cal. 583 [66 P. 863] ; *King* v. *Amy & Silversmith Consol. Min. Co.,* 152 U.S. 222 [14 S.Ct. 510, 38 L.Ed. 419] ; *Garibaldi* v. *Grillo,* 17 Cal.App. 540, 542 [120 P. 425].)

After considering the facts found, plaintiff's claim that defendants were guilty of bad faith falls with its own weight. The court's finding that plaintiff's actions were clandestine and that he was acting in bad faith is supported by the showing made. ▮ Plaintiff, through a quiet title action in equity, should not be aided when the court finds, upon sufficient evidence, that he acted in bad faith. (*Ehrhart* v. *Bowling,* 36 Cal.App.2d 503, 508 [97 P.2d 1010].) The court did not err in refusing to admit into evidence as immaterial plaintiff's proffered Exhibits numbers 29 and 30 for identification. They were plaintiff's location notices posted upon claims other than the ones here in question. This sufficiently disposes of the other questions raised on this appeal.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied May 20, 1957, and appellant's petition for a hearing by the Supreme Court was denied June 26, 1957.