[Civ. No. 6081.   Fourth Dist.   May 20, 1960.]

V. R. SMITH et al., Respondents, v. A. D. DALY et al.,
Appellants.

Di Giorgio & Davis for Appellants.

Baker, Palmer, Wall & Raymond for Respondents.

GRIFFIN, P. J.—Two actions in the superior court, number 70549 involving a quiet title action to five gypsite placer mining claims, and number 70138 for damages for breach of a contract, were consolidated for trial. During the course of the trial, action number 70138 was dismissed and the court proceeded with the trial of the quiet title action.

The principal question involved is whether defendants performed the necessary assessment work on said claim during the year July 1, 1956, to July 1, 1957, and before plaintiffs filed a claim thereto August 1, 1957; whether these claims were open for relocation by plaintiffs when they filed their notice of location. Defendants' answer and cross-complaint seeks to quiet their title thereto, to recover damages for trespass, claims full compliance with all annual assessment work required by law to July 1, 1957, and alleges plaintiffs to be claim-jumpers without right.

It is conceded that defendants did, on July 8, 1957, record a notice of proof of annual labor or improvements performed for the year indicated by A. D. Daly. It is further conceded that Daly owned and actively worked these claims since 1936 and that he had done the necessary assessment work up to July 1, 1956. The pretrial order recites: "If such assessment

work was performed by him (Daly) or by someone on his behalf, the claims of the plaintiff in the second action are without validity."

A brief description of these claims and the surrounding circumstances is necessary to a proper understanding of the factual background and conclusions to be reached. The deposit of gypsite, which is the subject of the action, lay beneath a thin overburden of dirt in the open desert, in the Red Rock Mining District, at Cantil in Kern County. In order to "mine" this material, it was first necessary to scrape off the overburden with a bulldozer or similar piece of equipment. The gypsite was then bladed into long "windrows" so that it could dry out. When it was sufficiently dry, the material in the "windrows" was bulldozed into a pile convenient to the "loader." There is some evidence indicating this so-called stockpile was only a few feet in height and at least some portion of it was stockpiled in the pit itself after this operation. The "loader" was more than the name implies. It consisted of a series of about 15 returning elevator buckets rotating on a belt leading up from the level of the stockpile to a bin or large container of a stationary type, at the top of which was located a so-called mechanical oscillating screen which pulverized the material, removed lumps and impurities from the ore before depositing the cleaned gypsite into a funnel-shaped bin which was opened and thereafter the gypsite fell in this powdered form into big trucks passing under it and was carried away in this pulverized condition to customers. There is some conflict in the evidence as to whether further scraping off of overburden or further cuts were made in the original deposit and further stockpiling of it was made after July 1, 1956, and prior to July 1, 1957. Apparently defendants, or their former lessees, had, prior to July 1, 1956, thus worked the claims and stockpiled the gypsite. Defendant Daly and his wife, during the time in question, lived in a house either on or near these claims. He suffered a prolonged illness and died on November 26, 1957.

In an exchange of letters beginning November 12, 1955, plaintiff Smith first wrote Daly in part:

"Since Mr. Barnett and I visited your mine, we have organized the Mojave Desert Gypsite Company for the purpose of selling your material . . .

"It is my understanding that the price to me for my own ranches is $1.50 per ton F.O.B. mine, and to the outside farmers $2.00 per ton . . .

"If this meets with your approval, please sign one copy and return it to us.

"As soon as possible I want to start hauling gypsite for some of my properties which have not already been treated."

Signed:   V. R. Smith

Approved:   A. D. Daly.

About February, 1956, all parties proceeded under this general agreement, as well as some oral agreement or arrangements whereby Daly was to furnish the bulldozer, machinery, loader and a man to operate them, and place the gypsum in condition and in a position to be loaded on Smith's trucks. Daly was to pay this expense, or Smith was to pay it and deduct the amount from proceeds due to Daly. Apparently 4,700 tons were thus delivered; 2,395 tons were taken out during the assessment year involved. About April 3, 1956, Daly wrote Smith, reciting that:

"About six months ago, it was orally understood between yourself and the Mojave Desert Gypsite Co., . . . that if you used my product . . . I would not sell my product . . . to any other persons who would undertake marketing gypsite or gypsum in those areas for a reasonable time . . .

"I am now approached by third parties who are offering to purchase said gypsite deposit . . . I will protect you and your rights in the event that I sell said deposit . . . I consider our previous oral understanding as binding and intend to confirm it by this letter so that you will obtain all of the gypsite that you may need from my deposit . . . until the 31st day of December, 1965, with an option on your part to extend it for an additional period of 10 years . . . The prices quoted are to be for bulk shipments f.o.b. the A. D. Daly Mine. . . .

"In addition to the foregoing and in further consideration of your personal use of my product and the sale promotion that you have done to date, I also confirm our oral understanding that I will sell said gypsite deposit at Cantil to you for $100,000.00 on the following terms:

"$14,000.00 payable in cash on or before the 15th day of June, 1956, which said payment will give you title to all of the personal property on said premises and act as a down payment on the mining property. . . . This offer of sale will be accepted if said initial payment of $14,000.00 is made on or before the said 15th day of June, 1956."

Signed:   A. D. Daly

Approved:   V. R. Smith.

The court found generally that neither defendants nor any person on their behalf performed any labor or made any improvements on any of the claims for the annual period ending July 1, 1957, except a small amount of work of indefinite value in connection with loading and shipping gypsum from gypsum which had been previously mined and stockpiled by lessees of defendants and that the "loading and shipping did not in any manner constitute improvement or development of said mining claims." It denied defendants' recovery on their cross-complaint and quieted plaintiffs' title to said mine as against these defendants. Judgment was entered accordingly.

Appellants first argue that plaintiffs were barred and estopped, as a matter of law, from relocating on defendants' claims because of their prior contractual relationship. The court made no specific finding on this question although it was conceded by plaintiffs, in the pretrial order, that one of the issues presented for consideration was whether plaintiffs were estopped to claim a valid, good faith location by reason of their contractual relationship. The pretrial order recites that plaintiffs dispute the claim of estoppel because they never were in possession of the claims and never exercised the option tendered to them by Daly. A specific finding on this question should have been made because of the various oral and written agreements of the parties and their conduct and actions in reference thereto.

Plaintiffs claim the agreement, including the option to purchase, was breached by defendants and defendants make the same claim in reference to plaintiffs. Whether that option was still enforceable against defendants at the time plaintiffs filed their location notices is not indicated by the findings.

It is a cardinal rule that when an agent, employee or trustee attempts, in violation of a contract or in breach of a trust, to relocate or obtain title to a claim in his own name, he will be charged in equity as trustee of the rightful owner, and will not be permitted to secure any advantage by such attempted relocation. (30 U.S.C.A. § 28, n. 395; *Clarke* v. *Mallory*, 22 Cal.App.2d 55 [70 P.2d 664].) In *Golden Giant Mining Co.* v. *Hill*, 27 N.M. 124 [198 P. 276, 14 A.L.R. 1450], the relocator first went into possession of it under a contract to purchase the controlling interest. It was there held that this relationship came within the rule above-cited. See also *Kasey* v. *Molybdenum Corp. of America*, 176 Cal.App.2d 346

[1 Cal.Rptr. 393], which holds that under a contract of sale, possession gained thereunder could not defeat a technically defective but perfectable title of the seller. ▪ *MacDonald* v. *Midland Mining Co.,* 139 Cal.App.2d 304 [293 P.2d 911], held that a person with knowledge of another's mining claim cannot in good faith avail himself of technical defects in such claim. ▪ ▪ Also in *Mandel* v. *Great Lakes Oil etc. Co.,* 150 Cal.App.2d 621 [310 P.2d 498], it was held that in a quiet title action involving a possessory right to mining claims, plaintiff has the burden of proof and must stand on the strength of his own title, and that where it appears on sufficient evidence that the asserted rights sought to be enforced by plaintiff in an action to quiet title to a mining claim were secured in bad faith, equity should refuse to aid him.

▪ In the instant case, it would seem manifest that plaintiffs not only obtained a great deal of information about the mine itself during the contractual relationship, but because of that contractual relationship they had intimate knowledge of the failing health of Daly and of the extent of the assessment work which he did or did not perform during the year, or which others did or did not perform on his behalf. Since he at all times resided on or near these claims, it rather shocks the conscience of the average man to think that plaintiffs should then be permitted to use the knowledge thus obtained against him and make claim to these mines under the circumstances related. The necessity for further findings on the issue of estoppel is indicated.

▪ Bearing on the question of the court's finding that the work done by Daly, his agents and employees, or by plaintiffs, under the contract, did not constitute improvements or development of said mining claims, the evidence indicates otherwise. *Ring* v. *United States Gypsum Co.,* 62 Cal.App. 87 [216 P. 409], involved a similar gypsum placer mining claim near Amboy in San Bernardino County. In that case, as in this, the several claims were worked under a general system of group development. It was there conceded, as it is here, that the claimed owner had the right of possession through valid locations, and proof of labor, as required by law, which had been duly recorded. It was there held that under these circumstances the burden of proof was upon the subsequent locator to show the previous owner's rights had been abandoned or forfeited. The factual background of that case is quite similar to the instant case in reference to the nature

of the mining claims, improvements made and work performed. A mill was there operated on one of the claims. The court said:

"It was also shown that the deposit of gypsum lay directly beneath the surface, which was a thin coating of mud and silt, the entire territory being the bed of an old lake which had completely dried and disappeared. The method of operations was to plow or scrape the surface from the mineral deposit and then to load the mineral into trucks by means of scrapers attached to tractors. The mineral deposit was then hauled to the mill, where it was cleaned and dried. It is claimed, with apparent good reason, by the respondent, that this process of cleaning the dirt from the mineral deposit at the mill was a substantial and important part of extracting the mineral from the ground. That is to say, that the gypsum lying in a solid mass did not require any mining operations such as are necessary in the ordinary quartz or placer mining for gold or silver or other similar minerals, but that all that was required was to carefully clean from the mineral deposit the surface layer of dirt. In accordance with this theory it was then shown that numerous roads had been constructed leading from the various claims to the mill operated by the respondent, some of which were made specially for the accommodation of tractors, and that this work was a necessary part of the development of the various claims for the purpose of facilitating the extraction of the mineral therefrom."

The trial court found that labor expended for this operation tended directly to advance the development and benefit of each and all of said claims and to facilitate the extraction of minerals therefrom. The court, on appeal, affirmed this finding and conclusion. A hearing was denied by the Supreme Court. We are unable to differentiate that holding from the facts in the instant case. (See also *Sampson* v. *Page,* 129 Cal.App.2d 356 [276 P.2d 871].) The work on the claims here involved was performed by agents and employees of Daly. He owned, and paid from the net proceeds for operation of, the tractors, bulldozers, loaders, bin and oscillating screen and pulverizer necessary to convey the gypsum from its stockpile in the pit to the loader and it was there screened (or milled) so that it could be made usable and marketable under standards prescribed by regulations of the Department of Agriculture.

There is evidence that during the year in question, plaintiffs hauled the several tons of such screened products indicated away from the claims in this fashion. The time-book of Daly's employee Chanz shows plaintiff paid him $6.00 for

each load between September 7, 1956, and March 12, 1957, totalling in excess of $481 and Daly paid him in excess of $306. Other employees were paid an additional $120. Among these items were payments for "rebuilding stockpile . . . labor on equipment and spreading gypsum for drying purposes in the pit and on the stockpile." Daly, in his deposition, testified he paid other employees various sums for this service, in excess of $300; that his plan in developing the mine was to mine out the place where the gypsite was deepest so that the water would run off into the resulting pit and dry out the gypsite on the remaining claims. In *Mann* v. *Budlong,* 129 Cal. 577 [62 P. 120], it was said that a court cannot substitute its judgment as to expediency of methods employed for that of the owners. There was further testimony that a neighbor friend assisted Daly in removing fences so trucks could come and go and that he repaired a water pipeline leading from Daly's residence to the claim; that the water was used as part of the mining operations in settling the dust on the loaded trucks before their departure and he did work in crowning roads leading to the claims. There was no evidence that Daly actually paid him any money for this service, but he, with others, was, prior to July 1, 1957, interested in purchasing these claims and did this work for Daly in contemplation of obtaining a contract of purchase of gypsite from Daly together with an option to purchase the claims for $100,000. Thereafter, on July 26, 1957, such a contract was drawn. Plaintiffs would not allow these parties to have possession because of plaintiffs' claimed title. The reasonable value of labor performed by these parties is not indicated, but it well appears that defendants would be entitled to have such value considered in connection with the claim of assessment work performed prior to July 1, 1957. (*Anderson* v. *Caughey,* 3 Cal. App. 22, 27 [84 P. 223]; *Thorton* v. *Phelan,* 65 Cal.App. 480, 485 [224 P. 259].)

Furthermore, on a motion for a new trial on the grounds of newly discovered evidence, defendants presented affidavits of several individuals who stated they would testify that in 1957, before July 1, they saw performed or did perform work on said claims to a considerable extent, exceeding in value the sum of $700. The work consisted of 11 days' labor in removing overburden on one claim, extraction of about 60 tons of gypsite for personal use and also digging pits, stripping and working on roads. If true, these were proper items to be considered.

(See *Lind* v. *Baker*, 31 Cal.App.2d 631 [88 P.2d 777].) Defendants accounted for the failure to produce these witnesses at the trial by alleging that counsel who tried the case was not aware of these persons having knowledge of these facts. The court denied the motion for a new trial. ■ A forfeiture of a mining claim for failure to do the annual work can be established only upon clear and convincing evidence. ■ Every reasonable doubt will be resolved in favor of the validity of a mining claim as against the assertion of a forfeiture. (*Betts* v. *Stephenson*, 100 Cal.App.2d 361 [223 P.2d 651].)

Since the judgment must be reversed and the cause reconsidered in accordance with the suggestions pointed out, further evidence on this subject proffered on the motion for new trial would be available to defendants.

Judgment reversed.

Coughlin, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied July 12, 1960.